SISLER et al. v. MISTROT et al. (No. 7304.)

(Court of Civil Appeals of Texas. Galveston. Jan. 25, 1917. Rehearing Denied Feb. 15, 1917.)

1. LIBEL AND SLANDER ☞85—TRESPASS ☞ 40(4)—PLEADING.
   Plaintiff's petition alleged that she purchased a suit from defendant store, and, having become dissatisfied, notified the store, which requested that she bring the suit in, and that, when she did so, defendant manager and president of the store used toward her "violent, harsh, insulting and abusive language," and talked in a "loud, rough and angry tone of voice," using insulting, sneering, and rude remarks in the presence of other shoppers. Held, that the petition failed to state a cause of action, for slander on the case, in that it failed to set out the particular words used by defendant manager.
   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 201–204: Trespass, Cent. Dig. §§ 83, 84.]

2. LIBEL AND SLANDER ☞2—INTENT.
   The intent with which words claimed as actionable were spoken is immaterial in the absence of any claim to exemplary damages.
   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 109, 110.]

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by Eula B. Sisler and another against G. A. Mistrot and another. From a judgment dismissing the suit, plaintiffs appeal. Judgment affirmed.

A. T. Carleton, W. F. Tarver, and L. M. Ballowe, all of Houston, for appellants. S. H. Philbin, Walter H. Walne, and Baker, Botts, Parker & Garwood, all of Houston, for appellees.

GRAVES, J. This was a suit by Eula B. Sisler, joined by her husband, J. B. Sisler, against G. A. Mistrot individually, and Mistrot-Curtis Company, a corporation, for damages in the sum of $2,500 for mental pain and anguish alleged to have been suffered by said Eula B. Sisler upon allegations hereinafter fully set out. The defendants filed a general demurrer to the amended petition upon which the cause was heard, which demurrer, upon a hearing, the trial court sustained, and upon plaintiffs refusing to amend, the suit was dismissed. From this judgment of dismissal the plaintiff, upon proper procedure, appeals to this court. Therefore the only question for this court to determine is one of law as to whether or not the trial court erred in sustaining the general demurrer to plaintiffs' petition, and in holding that the same did not state a cause of action. For the purpose of determining this question we here recite fully the material allegations of the petition:

After the usual formal averments, it was alleged that the Mistrot-Curtis Company is a corporation conducting a store for the sale of ladies' wearing apparel in the city of Houston; that G. A. Mistrot was its manager and president, and that the plaintiff Eula B. Sisler, after having purchased a certain ladies' suit from the defendant store, and after having become dissatisfied with the suit, and after having so notified said company, was requested by one of its employés to bring the suit to the store, being informed by him that the company would arrange the matter satisfactorily. From appellants' brief filed in this court, pages 4 to 7, inclusive, we copy the remaining allegations of the petition, as follows:

"We here insert verbatim those paragraphs of the petition that allege the wrongful thing said and done by the defendant Mistrot, upon which the plaintiffs base their cause of action:

"VIII. That when plaintiff Eula B. Sisler and her friend arrived at defendants' store, they were conducted by one of the defendants' employés to the defendant G. A. Mistrot. That upon this plaintiff advising said G. A. Mistrot, president and general manager of the Mistrot-Curtis Company, of the object of their visit to the store, the said Mistrot became very angry and he did commence to use towards this plaintiff, violent, harsh, insulting and abusive language, and the manner and mood in which this defendant talked was very threatening and insulting and rude, in that he gesticulated wildly and beat his fist upon the counter. That he talked in a loud, rough and angry tone of voice to said plaintiff, using towards her insulting, sneering and rude remarks. That such loud, angry and sneering talk and conversation used by the defendant Mistrot towards this plaintiff was heard, and was intended by the defendant Mistrot to be heard, by the many customers then in the store, doing their Christmas shopping, as well as the numerous salesladies and other employés of the defendant company then in the store. That the plaintiff becoming very much embarrassed by reason of such conversation on the part of the defendant Mistrot, and not caring to prolong the conversation and to have the said defendant to address towards her the insulting remarks in the presence of the said customers and salesladies and other employés, did thereupon leave the said Mistrot, and with her said friend did walk towards the elevator in the store for the purpose of departing from the premises. That thereupon the said Mistrot did instruct one of his assistants in the department to deliver the package containing said suit to the plaintiff, and that said assistant, acting under the instructions from the said Mistrot, did endeavor to force this plaintiff to accept the package, and just as she and her friend did step into the elevator preparing to leave the premises, that said assistant did then and there throw said package at this plaintiff and her friend in the presence and in the sight of said crowd of Christmas shoppers in said store at the time and in the sight and

in the presence of the numerous salesladies and other employés then and there in the store. That as said assistant threw the package at this plaintiff and her friend while they were in said elevator, the said assistant did instruct the negro man in charge of the elevator to deliver said package and to see that the women took it.

"IX. That all of the aforesaid loud and angry talking and acts on the part of the defendant Mistrot, and the aforesaid acts of his assistant under his direction in trying to force the plaintiff to accept said package, and in throwing said package at said plaintiff Eula B. Sisler and her friend, which all took place at a time of the day when the store was crowded with Christmas shoppers and the numerous salesladies and other employés of the defendant company. That such loud and angry talking and the acts accompanying such talking on the part of the defendant Mistrot could be heard and seen, and he intended such to be heard and seen, and such were in fact heard and seen by said Christmas shoppers, as well as by said salesladies and other employés of defendant company. That the said act of defendant company's agent and employé, under the direction of said G. A. Mistrot, president of said company, in trying to force plaintiff to accept said package, and in then throwing said package at this plaintiff and her friend, could be seen and was intended on the part of the defendant G. A. Mistrot and said employé to be seen, and was in fact seen by said Christmas shoppers who were then in the store in great numbers, as well as by the numerous salesladies and other employés of the defendant company. And that all of said loud talking and words and acts as aforesaid caused this plaintiff Eula B. Sisler great humiliation, shame and vexation, and that she suffered mental pain, anguish and mortification as the result thereof. That at no time during the above occurrence and conversation was this said plaintiff guilty of any misconduct whatsoever; but on the contrary, these plaintiffs would show unto the court that said plaintiff was at said store at said time to amicably and peaceably transact a business matter at the special invitation and request of defendant company's agent. Plaintiffs would further show by reason of the unjust, unwarranted, insulting and unexpected treatment accorded to plaintiff Eula B. Sisler as aforesaid, and by reason of the injury and shame, abuse and humiliation heaped upon her by defendant company's agent and employé, G. A. Mistrot, in abusing and insulting and acting as he did towards her before the crowd of Christmas shoppers, as well as before the numerous salesladies and other employés of the defendant company, and by reason of the act by defendant company's agent as aforesaid in trying to force plaintiff to accept said package, and the package being thrown at her in the presence of said crowd of Christmas shoppers, as well as the numerous salesladies and other employés of the defendant company, when it was said defendant company's agent's duty to plaintiff Eula B. Sisler to see that she was treated courteously and attentively while in said defendant company's store on a business mission —all of which said acts on the part of the defendant company's agent and employé, and on the part of the said G. A. Mistrot, were in utter disregard of plaintiff's rights and in total violence of defendant company's duty to said plaintiff as its customer, and that as a result of all of the aforesaid acts and deeds and words the feelings of said Eula B. Sisler were greatly hurt, she was humiliated, vexed, harassed, mortified and embarrassed, and suffered great mental pain and anguish, and was put in bad repute before the other customers who were then in the store, as well as before the numerous salesladies and other employés of the defendant company.

"X. And these plaintiffs further show unto the court that the unjust, unwarranted and uncalled for and unexpected abusive and insulting treatment heaped upon this plaintiff Eula B. Sisler by defendant company's agent, G. A. Mistrot, in talking in the loud, angry and insulting way that he did, and in the acts when so talking in refusing to make the satisfactory adjustment of the controversy about the suit of clothes, and in having said package tendered to her as it was, and in having said package thrown at her when she refused to take it— all of which acts and words were done and said in the presence of and in the hearing of many customers then in the store, and numerous salesladies and other employés of the defendant company, which all of said acts and words were not only done and spoken in total disregard to plaintiff's Eula B. Sisler's rights and privileges as a customer of defendant company's store, and in utter violation of defendant company's duty to said plaintiff Eula B. Sisler, as such customer, but all of which said abusive acts and things done in the premises aforesaid were done and caused to be done by G. A. Mistrot, president and general manager of the Mistrot-Curtis Company, willfully, maliciously and with the intent to vex, harass, embarrass and insult plaintiff Eula B. Sisler, in a manner calculated to humiliate and mortify her, and to bring her into bad repute before other customers then in said store, as well as before the numerous salesladies and other employés of the company. That such abusive acts and things done in the premises aforesaid did in fact oppress, vex, humiliate, embarrass and mortify the plaintiff Eula B. Sisler, and did bring her into bad repute, and did put her in an embarrassing position before the other customers then in said store, as well as the numerous salesladies and other employés then in said store, and that by reason of said abuse, insult and embarrassment, this plaintiff was greatly humiliated, vexed, mortified and annoyed, becoming exceedingly nervous and sick, all of which was caused directly by the conduct of the defendants and their employés, as hereinabove set out, and this plaintiff Eula B. Sisler was thereby damaged in the sum of $2,500."

Having thus copied in full all the allegations upon which plaintiff by her own statement based her cause of action, it will be noted that she nowhere set out either the words themselves, or their equivalent, but contented herself with the statement that the language used was "violent, harsh, insulting and abusive," and "the manner and mood in which this defendant talked was very threatening and insulting and rude, in that he gesticulated wildly and beat his fist upon the counter; that he talked in a loud, rough and angry tone of voice to said plaintiff, using towards her insulting, sneering and rude remarks."

[1] As liability to plaintiff was predicated upon the use of the words alone under the particular circumstances alleged, whether this suit be termed an action for slander, or an action upon the case, it seems to us that it makes little or no difference in so far as the necessity for proper pleading is concerned. In either case we think it was necessary, under our system, for plaintiff to state her cause of action by clear and distinct averments, and since her sole cause of action consisted in the language used in the manner and under the circumstances it was, and

since of necessity this language must be construed by the application that may be made of it to the particular facts and circumstances stated, we think the pleading failed to meet these requirements. In actions of libel and slander it has been frequently held to be the general rule that the petition must set out the particular defamatory words, and that the statement of their substance and effect is insufficient. Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833; Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768; 25 Cyc. 447.

While these cases were for libel or slander, as stated, we see no special difference between them and the case at bar, in so far as the necessary pleading is concerned.

In the case of Bradstreet Co. v. Gill, 72 Tex. at page 117, 9 S. W. at pages 754, 755 (2 L. R. A. 405, 13 Am. St. Rep. 768), our Supreme Court says:

"The petition does not set out in hæc verba the very language of the libel, but pretends to give its substance and meaning. Our rules of pleading require that the petition shall set forth 'a full and clear statement of the cause of action, and such other allegations pertinent to the cause as the plaintiff may deem necessary to sustain his suit,' etc. It has been many times decided by our courts that the common-law distinctions as to pleading, and its technicalities, do not prevail with us, but that a clear and logical statement of the cause of action is all that is necessary. A clear statement of the facts constituting the cause of action cannot, however, be dispensed with. The character of the suit must be the guide to the pleader, and enough must be stated to constitute a cause of action. In a suit on a note it will be sufficient to state the substance and legal effect of the note. Not so in a suit for libel. A libel suit is based on language or its equivalent. The complaint in a libel suit should put the court in possession of the libelous matter published—the language used, with such innuendoes as are necessary to explain what was meant by the language—and to whom it applied, so as to enable the court to determine whether the words are actionable. In this case the complaint attempts to give the meaning of the words or libel only, without stating what the libel was. If the libel consisted in reporting plaintiff's standing as a merchant, 'in blank,' the complaint should have informed the court and the defendant of the fact, with such explanations as to what was meant by the report as were necessary to show that the report was injurious and defamatory. This is not a case where the pleader must, from the nature of the publication, resort to a verbal description of the slanderous matter, as it would be when movements, postures, or pictures are used. Plaintiff could have stated his cause of action as it was, in clear terms. He has not done so. It is not sufficient, in this kind of a suit, to state the substance of the language used, or its meaning. We believe the general demurrer ought to have been sustained. See Townsh. Sland. and Lib. pars. 329–335, inclusive."

We think the rule there stated applies with equal force here, especially since from the nature of this case it was unnecessary to resort to any verbal description of the language used, as is the case where movements, postures, or pictures are used, because

here the language was used directly to the plaintiff herself, and she must have known exactly what it was, and could, by pleading it just as spoken to her, have afforded the court the opportunity of considering the words, together with all the facts and circumstances under which they were spoken, and of determining whether or not they were, under such detailed and fully stated circumstances, actionable, or even "violent, harsh, insulting, abusive, loud, sneering and rude," as alleged by her; but this she did not do. Was the court, under these circumstances, in position to determine whether or not such unstated words were actionable, or was it bound to accept her mere statements that they were? We think it could not properly do either. The following authorities hold that the petition must set out the libelous and abusive words: Cook v. Cox, 3 Maule & S. 110; Harris v. Ware, 4 C. P. Div. 128; O'Donnell v. Nee (C. C.) 86 Fed. 915; Gendron v. St. Pierre, 72 N. H. 400, 56 Atl. 915; Webster v. Holmes, 62 N. J. Law, 55. 40 Atl. 778; Kirby v. Martindale, 19 S. D. 394, 103 N. W. 648, 9 Ann. Cas. 493; Crowell v. Schneider, 165 App. Div. 690, 151 N. Y. Supp. 160; Townshend, Slander and Libel (4th Ed.) 329.

It has further been long held in Texas that the general demurrer does not admit the mere views and opinions and conclusions of the pleader, but only the pertinent and well-pleaded facts, and that the "petition should state the plaintiff's cause of action by distinct averments, and not leave it to the court to deduce * * * one fact from the statement of another." Malone v. Craig, 22 Tex. 609; Heil v. Martin, 70 S. W. 430; Ball v. Texarkana Water Corporation, 127 S. W. 1068; Wood v. Evans, 43 Tex. 175; Ewing v. Duncan, 81 Tex. 231, 16 S. W. 1000.

Neither litigant here has cited this court to a single case allowing recovery for words or language—not actionable per se—where the exact words or their equivalent, taken together with the actions and circumstances under which they were spoken, were not set out by distinct averments, nor have we independently found such a case.

But aside from the insufficiency of the pleading, and coming to a discussion of the merits of the case as presented by appellant, we find her exact contention epitomized in only two propositions, as follows:

First: "An allegation of defamatory words, willfully and maliciously spoken to a person, at a time and under such circumstances as to produce mental suffering, sufficiently states a cause of action."

Second: "Damages can be recovered for mental pain and suffering, unaccompanied by physical injury, when the wrongs complained of are willful and malicious, intended by the wrongdoer to wound the feelings and produce mental anguish and suffering, or from which such results should reasonably be anticipated as natural consequences."

In support of this first proposition appellant cites the following authorities: David-

son v. Lee, 139 S. W. 907; Telegraph Co. v. Bowdoin, 168 S. W. 2; Odger on Libel and Slander, pp. 88–91; Reid v. Providence Journal Co., 20 R. I. 120, 37 Atl. 637; Terwilliger v. Wands, 17 N. Y. 54, 72 Am. Dec. 420; Young v. McRae, 3 Best & S. 264; Lynch v. Knight, 9 H. & L. Cas. 589. While in support of her second proposition she cites the following authorities: Railway Co. v. Luther, 40 Tex. Civ. App. 517, 90 S. W. 44; Davidson v. Lee, 139 S. W. 907; Perkins Bros. v. Anderson, 155 S. W. 556; Telegraph Co. v. Bowdoin, 168 S. W. 2; Cooley on Torts (3d Ed.) vol. 1, p. 93.

Before applying these cases to the position appellant takes, sufficient recurrence to her pleadings must be had to note that she nowhere alleges assault, or attempted assault, imprisonment, or bodily restraint, physical injury, or fear of physical injury, or, as far as we can determine, the violation of any other legal right or obligation.

Testing the case thus made by appellant by the principles announced in the cases she cites, we do not think they sustain her contention. The case of Davidson v. Lee, 139 S. W. 904, cited under both propositions, and decided by this court in an opinion by Chief Justice Pleasants, was an action for both actual and exemplary damages based upon both false imprisonment and actual assault, in which the plaintiff had been locked in a room, and at the point of a drawn pistol, held under bodily restraint for a continued length of time, and shoved and pushed about the room, and while in this situation told:

"Lee, you are not an honest man. * * * You will not leave. You will pay me before you get out of here, or I will kill you. * * * Lee, you are a dishonest scoundrel."

Appellant quotes as authority for her position the following part of that opinion:

"The rule that damages cannot be recovered for mental suffering unaccompanied by physical injury is not applicable when the wrong complained of is a willful one intended by the wrongdoer to wound the feelings and produce mental anguish and suffering, or from which such result should be reasonably anticipated, as a natural consequence."

[2] But we think she misapplies, if she does not misapprehend, the court's meaning in that opinion. It must be additionally noted at this point that appellant did not seek exemplary damages in her suit; while, as stated, such damages were claimed in the Davidson v. Lee Case, and it is evident that the court was referring to that element of damage in the paragraph quoted, because it is well settled by a long line of authorities that the intent with which words are spoken, claimed as actionable, is immaterial in the absence of any claim to exemplary damages. Belo & Co. v. Smith, 91 Tex. 221, 42 S. W. 850; King v. Sassaman, 54 S. W. 304; Birmingham R., L. & P. Co. v. Coleman, 181 Ala. 478, 61 South. 890; Sedgwick on Damages (9th Ed.) par. 46a; Townes on Torts.

Moreover, the court in using the words "wrong" and "wrongdoer" quite evidently had in mind and was discussing some such legal wrong as had been perpetrated by the plaintiff in that case, that is, false imprisonment, assault, and bodily restraint, and that it did not intend to lay down the broad rule contended for by appellant as stated in her second proposition here.

The next case cited by appellant under both her propositions is Telegraph Co. v. Bowdoin, 168 S. W. 2. In this case also there was both an actual assault and the following insulting words:

"Get out of here, you poor white trash; you ain't nothing but ignorant fools," etc.

So in Reid v. Providence Journal Co., 20 R. I. 120, 37 Atl. 637, the action was for libel based upon the publication of an article in a newspaper, which was, of course, fully set out in the petition; the court thus having the exact words before them, together with the attending circumstances, as set out in the innuendo pleaded by plaintiff in explanation of the application and of its effect, held that the words were not defamatory, and for that reason sustained defendant's demurrer to the petition; we therefore do not think that case upon the facts necessary to its decision sustains the contentions of appellant here, but appellant no doubt cites it because of the following paragraph appearing near the close of the opinion on page 124 of 20 R. I., on page 638 of 37 Atl., to wit:

"We think it may be safely said that any words, if false and malicious, imputing conduct which injuriously affects a man's reputation, or which tends to degrade him in society, or bring him into public hatred and contempt, are in their nature defamatory, and either actionable per se or may be made actionable by proper innuendoes, or by alleging and proving special damage, and that words which are not in their nature defamatory, while, perhaps, if false and malicious, or if used by a person who knows, or ought to know, that special damage will follow, and such damage does in fact follow, an action on the case may be maintained, whatever the nature of the words (Odger, supra, 88–91; Young v. McRae, 3 Best & S. 264; Lynch v. Knight, 9 H. L. Cas. 589), yet cannot be made the basis of an action for libel or slander."

This quotation seems to sustain the contention of appellant in the case at bar, and cites the same cases, to wit, Odger on Libel and Slander, pp. 85–91; Young v. McRae, 3 Best & S. 264; Lynch v. Knight, 9 H. & L. Cas. 589; but, as stated, this declaration was unnecessary to the determination of that case, the court already having held the words not defamatory, and for that reason not actionable, hence was dictum, and, as such, we believe, was out of harmony with the great weight of authority upon this question; that it is dictum is quite clear from the fact stated, that the court had already decided a wholly different case.

In appellant's next case (Perkins Bros. Co. v. Anderson, 155 S. W. 556), the plaintiff, a lady, was arrested upon a public street by

defendant's dective, who further committed an assault by forcibly taking from her and searching her handbag, and then imputed to her theft of articles from a store she had just left. This and the other cited cases in which there was an actual assault, though not battery, or perhaps other violated legal rights is ruled by the well-settled doctrine that damages in such cases may be recovered for pain and mental distress. Telegraph Co. v. Bowdoin, 168 S. W. 2; Leach v. Leach, 11 Tex. Civ. App. 699, 33 S. W. 703; Id., 93 Tex. 666; Lonergan v. Wm. Small & Co., 81 Kan. 48, 105 Pac. 27, 25 L. R. A. (N. S.) 976.

In Terwilliger v. Wands, 17 N. Y. 54, 72 Am. Dec. 420, which case is cited, quoted from, and relied upon by both litigants here, the action was for damages for defamatory words alone, spoken to others about plaintiff and by them repeated to him; the court, in denying a recovery, says:

"It would be highly impolitic to hold all language wounding the feelings and affecting unfavorably the health and ability to labor, of another, a ground of action, for that would be to make the right of action depend often upon whether the sensibilities of a person spoken of are easily excited or otherwise, his strength of mind to disregard abusive, insulting remarks concerning him, and his physical strength and ability to bear them. Words which would make hardly an impression on most persons, would be thought by them, and should be by all, undeserving of notice, might be exceedingly painful to some, occasioning sickness and an interruption of ability to attend to their ordinary avocations. There must be some limit to liability for words not actionable per se, both as to the words and the kind of damages; and a clear and wise one has been fixed by the law. The words must be defamatory in their nature, and must in fact disparage the character."

Then G., C. & S. F. Ry. Co: v. Luther, 40 Tex. Civ. App. 417, 90 S. W. 44, is cited. This action arose from a negro woman, in the employ of the railway as a waitress in charge of the ladies' waiting room in one of its depots, having an altercation with plaintiff, a white lady, calling her a liar, and standing right over her, shaking her finger in her face, and looking vicious and angry, and completely terrifying the plaintiff. In addition to the tort thus committed, the railway company was under the additional well-recognized duty of protecting its passengers against assault and insult from its own servants, because of its contract to carry its passengers safely and give them decent treatment en route. Thompson on Negligence, par. 3186; Elliott on Railways, par. 2579; Dillingham v. Russell, 73 Tex. 51, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; Railway Co. v. Franklin, 44 S. W. 702.

After thus reviewing the various cases cited by appellant, we must conclude that the principles of law therein stated, when applied to the facts of her case, furnish no authority for the broad rule thus contended for by her; especially when she locked up the real gist of her cause of action, the words themselves, within her own consciousness and thus herself denied the court the opportunity —afforded in every case she cites—of considering and determining whether these words, taken, considered, and construed under all the facts, acts, and circumstances furnishing a setting for them were of the kind, character, and effect alleged; and this unafforded opportunity was, we think, the right of the court and jury—to say nothing of the defendant's right to be apprised of the specific cause of action he must defend— whose province and duty it was, not plaintiff's, to decide whether or not any actionable wrong had been done her.

Not every infraction of the rules and canons of politeness, courtesy, good breeding, and gentlemanly conduct constitutes an actionable or legal wrong. If it were so, unfortunately our courts would doubtless very soon be choked with imaginary claims based upon the personal condition or equation as the sole element of damages, that is, individual sensibilities, such as susceptibility to excitement, nervousness, worry, or fright, where there was neither libel nor slander, assault, nor attempted assault, physical injury, nor the fear of it, imprisonment, bodily restraint, arrest, nor the threat of any of them, negligence, the violation of any other legal right, nor finally, the use of any disclosed and specific spoken words.

We cannot become, as we view it, the first court to open this hitherto closed door. In support of our conclusions we collate the following authorities: Williams v. Riddle, 145 Ky. 459, 140 S. W. 661, 36 L. R. A. (N. S.) 974, Ann. Cas. 1913B, 1151; Republic Iron & Steel Co. v. Self, 192 Ala. 403, 68 South. 328, L. R. A. 1915F, 516; Sanders v. Edmondson, 56 S. W. 611; G., C. & S. F. Ry. Co. v. Trott, 86 Tex. 412, 25 S. W. 419, 40 Am. St. Rep. 866; Townshend on Libel and Slander, §§ 329 to 335, inclusive; Cooley on Torts, § 160; Cyc. Assault and Battery; Kramer v. Ricksmeier, 159 Iowa, 48, 139 N. W. 1091, 45 L. R. A. (N. S.) 928.

Having thus determined that the able trial judge did not err in sustaining the general demurrer to plaintiff's petition, and in dismissing her suit, that judgment will be here in all things affirmed.

Affirmed.