# W. R. Harned v. E-Z Finance Company et al

No. A-3712. Decided January 7, 1953.
(254 S. W., 2d Series, 81.)

*Mullinax, Wells & Ball* and *William D. Kimbrough,* all of Dallas, for appellants.

*Mays & Lea, R. D. Hardy* and *H. B. Houston,* all of Dallas, for appellees.

Mr. Justice Brewster delivered the opinion of the Court.

This cause is here on a question certified by the Court of Civil Appeals at El Paso, pending its disposition of a motion for rehearing filed by the appellant, W. R. Harned. On original consideration it affirmed the judgment of the County Court at Law of Dallas County dismissing the case for want of jurisdiction.

Harned sued four loan companies and one insurance company, appellees, for statutory penalties of $137.50 as usurious interest, which he alleged appellees conspired to charge and

collect from him. He sought recovery of an additional sum of $150 on these allegations:

"In separate and concerted action defendants and each of them constantly from the first time W. R. Harned missed a payment on any loan, hounded and harassed W. R. Harned and his wife for additional payments of usurious interest after defendants and each of them had already received more money than they were entitled to receive. Defendants and each of them made numerous telephone calls each week to the home and to the place of business of W. R. Harned. They threatened to take up a collection in the neighborhood to apply on the usurious interest payments which they claimed were due to them. They threatened to cause plaintiff to lose his job. They called during such hours as they knew W. R. Harned was sleeping and would speak to his wife in abusive language, threatening and intimidating her.

"As a direct and proximate result of the illegal and fraudulent charges of usurious interest and the willful, wanton, harassment made in an effort to collect additional charges of usurious interest, W. R. Harned and his wife were each caused great mental pain and anguish. Plaintiff and his wife were worried about how they could keep up the payments because they were anxious to pay all of their just debts and did not realize that the claims made by defendants were not legal. They feared constantly that the harassment of the defendants would cause Harned to lose his job. They could scarcely find an hour's peace because at home or wherever they went, defendants and each of them were after them or at least they feared with good cause that defendants were after them. The Harneds did not have the money to pay the aforesaid illegal claims and they were deeply grieved because they were in what seemed to them a hopeless economic state enslaved to defendants and each of them for the rest of their lives, never able to establish credit, always in danger of losing their economic support and always under the threat of losing the small amount of property they had managed to accumulate.

"Par. 24. Defendants and each of them were and are guilty of wanton, willful, and malicious harassment and persecution of W. R. Harned and his wife and defendants and each of them should be compelled to pay to plaintiff the sum of at least one hundred ($100.00) dollars as damages for the mental pain and anguish which they have suffered at the hands of defendants. Furthermore, defendants and each of them should be compelled

to pay to plaintiffs fifty ($50.00) dollars as exemplary or punitive damages."

Appellees excepted to these allegations as follows:

"The allegations as to the alleged harassing and persistent collection calls and communications on which plaintiff predicates his demand for damages for mental anguish, and the corresponding demands for exemplary damages, are insufficient in law to state a cause of action, there being no showing in the facts alleged of any breach of any duty or the invasion of a right or the commission of an unlawful act."

The trial court sustained this exception. The only amendment offered by Harned was that the alleged wrongful acts of appellees were intentional and wilful. Concluding that Harned's petition as amended was insufficient to meet appellees' exceptions and pleas to the jurisdiction of the court, the trial court denied the amendment and dismissed the case.

On its own motion the Court of Civil Appeals certified this question:

"Did we err in concluding that the above quoted paragraphs of plaintiff's petition stated no cause of action?

1  The Court of Civil Appeals recognized in its tentative opinion that our general rule is that damages cannot be recovered for mental suffering when there is no physical injury, no injury to property, no other elements of actual damages. Gulf, C. & F. Ry. Co. v. Trott, 86 Texas, 412, 25 S. W. 419; Renfro Drug Co. v. Lawson, 138 Texas, 434, 160 S. W. 2d 246. This is the rule at common law; and it is supported by the great weight of authority in our several American jurisdictions.

Observing that Renfro Drug Co. v. Lawson, supra, lists some recognized exceptions to the general rule, the Court of Civil Appeals says that "appellant would add another, i.e., where the mental anguish is intentionally caused although the party so causing it has been guilty of no other independent tort. Appellant's position is sustained by several authorities from other jurisdictions * * * and by at least two distiguished legal writers cited by him. See Clark v. Association Retail Credit Men of Washington, D.C., 105 Fed. 2d 62, U.S.C.A. for District of Columbia; Barnett v. Collection Service Co., 214 Ia. 1303, 242 N.W. 25; La Salle Extension University v. Fogarty, 126 Neb.,

457, 253 N.W. 424; (91 A.L.R. 1491) Herman Saks & Sons v. Ivey, Court of Appeals, (26 Ala. App. 240), 157 So. 265; Prosser, International Infliction of Mental Suffering, A New Tort, 37 Mich. Law Review, 874; Magruder, Mental and Emotional Disturbances in The Law of Torts, 49 Havard Law Review, 1033". After citing authorities, including Sisler v. Mistrot (Civ. App.), 192 S. W. 565, which it says sustain the action of the trial court, the court said, "It is our conclusion, as said in Sisler v. Mistrot, supra, that 'we cannot become, as we view it,the first court (in Texas) to open this hitherto closed door,' to this new kind of tort action.

In Barnett v. Collection Service Co., supra, defendant resorted to high-pressure methods to collect $28.75 allegedly due it by plaintiff; a widow; it sent her a series of form letters, which were "coarse" and "vindictive;" they contained threats of what would happen to her if payment was not made, but there was no threat of physical violence or injury. She alleged that they were sent wilfully, maliciously and with intent to extort payment of a claim which defendant knew could not legally be collected. Her only claim for damages was for mental pain, anguish and humiliation suffered by reason of the letters. After pointing out that plaintiff's case was not based on any claim of negligence or of physical injury or any attempt to commit physical injury, the Supreme Court of Iowa said, "The rule seems to be well established *where the act is willful or malicious,* as distinguished from being merely negligent, that recovery may be had for mental pain, though no physical injury results. *In such a case the door to recovery should be opened but narrowly and with due caution.*" (Italics ours.) One authority cited in support of that holding is Davidson v. Lee (Tex. Civ. App.), 139 S. W. 904, error denied, which we shall discuss later in this opinion.

In La Salle Extension Univ. v. Fogarty, supra, the allegations as to 37 collection letters sent Fogarty, together with their purpose and effect, were very similar to those in the Barnett case, supra. The Supreme Court of Nebraska said there was no decision of its own "exactly in point," then planted itself squarely on the Barnett case and held the letters actionable. It drew a distinction between acts wilfully and maliciously done and acts negligently done, and held that the latters "were written designedly and for the purpose of harassing the defendant until he would meet their demands, whether the sum claimed was justly due or not."

In Herman Saks & Sons v. Ivey, supra, by an Alabama intermediate court, the trial court had granted plaintiff a new trial on a jury verdict of $1 on her allegation that by reason of a letter mailed her by defendant she was "greatly shocked, frightened, humiliated, and embarrassed, was made nervous, made sick and sore for a long period of time and caused to suffer great mental anguish and was annoyed and inconvenienced." Stating that the evident purpose of the letter was to frighten her into paying her account and that the effect "the receipt of such a letter would have upon a delicate, refined, nervous gentlewoman is of easy inference," the court held she was entitled to substantial damages and that, therefore, the trial court properly granted her a new trial.

Clark v. Associated Retail Creditmen, supra, does not support the appellant's contention. Plaintiff alleged that he suffered from arterial hypertension and had lost, but was slowly recovering, his sense of sight; that in order to recover, he had to avoid excitement and worry; that defendant knew these facts, notwithstanding which it sent him three letters not only to extort $61.80 allegedly due another but for the purpose and with the intent of injuring him both mentally and physically; that at least one of these letters was sent with the purpose of "worrying plaintiff and aggravating" his condition; that it did injury him both mentally and physically "and caused him to have a relapse and severe attacks of arterial hypertension." Conceding that it might be in one of the "open spaces" of the law (in response to suggestion by counsel that neither Blackstone nor any local authority recognizes such a tort as alleged by plaintiff), the court argues at length its thesis that "the law has long given redress, in some circumstances, for intended mental harm without more" and then notes that "in the present case *the shock which defendant intentionally inflicted not only risked, but actually caused, physical harm,*" under which circumstances recovery has repeatedly been allowed. (Italics ours.)

The Prosser article, supra, (37 Mich. Law Review, 874) states that "It is time to recognize that the courts have created a new tort," which if it must be named might well be called "oneriness"; that " 'Mental anguish' has been an orphan child notwithstanding its early recognition in the assault cases. The law has been reluctant, and very slow indeed, to accept the interest in peace of mind as entitled to independent legal protection". He then outlines some of the arguments against recognition of the new tort, viz., mental anguish is too subtle and

speculative to be measured by any known legal standard; mental anguish and its consequences are so intangible and peculiar and vary so much with the individual that they cannot reasonably be anticipated, hence they fall without the boundaries of any reasonably proximate causal connection with the act of the dedefendant; the "wide door" which might be opened, not only to fictious claims but to litigation over trivialties and mere bad manners. In this latter connection, he observed; "It is easy to lie about what goes on inside the plaintiff's own head." Then he points out that "virtually from the beginning mental suffering has been a recognized element of damages in assault, battery, false imprisonment, malicious prosecution and seduction," the determination of which is open in more or less degree to the objections above noted to the recognition of mental anguish alone as entitled to protection of the law.

As to the particular problem before us, Prosser says: "In recent years collecting creditors have come in for a great deal of attention. High pressure collection methods have not been received with any great degree of favor by the courts. * * * * Wherever it can possibly be done without too obvious pretense, the effect has been to find" some accompanying overt act which is itself a tort. Then he points to the Barnett and Fogarty cases and other authorities and says that in them, although "nothing whatever was involved except outrageously insulting collection letters or verbal abuse, the courts were faced squarely with the issue and proceeded to discard all such pretexts and to hold the defendants liable for the real wrong." Finally, he declares that all problems attending this new tort can be dealt with "if we were to jettison the entire cargo of technical torts with which the real cause of action has been burdened, and recognize it as standing on its own feet. There is every indication that this will henceforth be done, and that the intentional infliction of extreme mental suffering by outrageous conduct will be treated as a separate and independent tort."

Magruder, in his article, 49 Harvard Law Review, 1033, supra, is hardly less enthusiastic in his advocacy of the new tort. His discussion of the objections substantially parallels Prosser's. He concludes that the courts have already given extensive protection to feelings and emotions, and "If a consistent pattern cannot yet be clearly discerned in the cases, this but indicates that the law on this subject is in a process of growth."

In its Restatement of the Law of Torts (1934), Sec. 46, p.

86, the American Law Insitute says conduct intended to cause only mental or emotional disturbance to another is not actionable although it does result in such disturbance. In the 1948 Supplement, Sec. 46, p. 612, the Institute announces exactly the opposite conclusion, with the explanation that this part of the law of torts has been "real development" in recent years "and this development is continuing." Its illustration No. 4, on page 614, is: "A calls on B to collect an overdue bill. B truthfully says he cannot pay for three months because of lack of funds. In language pungent and picturesque A accuses B of dishonesty and moral degradation and threatens to have B arrested. A is liable to B for any *severe* emotional distress he causes." (Italics ours.)

A late supporting case is State Rubbish Collectors Ass'n. v. Siliznoff, 38 Calif 2d 330, 240 Pacific, 2d. 282, decided last year by the Supreme Court of California. It holds that where mental suffering constitutes a major element of damages it is anomalous to deny recovery on the ground that defendant's intentional misconduct fell short of producing physical injury. This case is the subject of a note currently appearing in 52 Columbia Law Review, p. 939, which says that the holding "furthers the desirable trend toward a recognition of liability for intentional injuries *reasonably capable of proof.*"

We have reviewed at some length the leading authorities which are said to sustain appellees' contention. They in turn cite others which one wishing to labor the subject further may read. However, we have concluded that appellees' "new tort" is condemned by the general rule announced by this court in Gulf C. & S. F. Ry. Co. v. Trott, supra, Renfro Drug Co. v. Lawson, supra, and many other cases, and that it is not within any of the rule's recognized exceptions. Numerous cases from other jurisdictions supporting our holding are cited in footnotes 18 to 9, inclusive, 52 Am. Jur., Torts, pp. 424 and 425.

It was said in So Relle v. Western Union Telegraph Co., 55 Texas, 308, (1881), that injury to the feelings, caused by the wilful neglect or fault of another, constitutes actual damages, for which recovery may be had. However, two years later we held that the proposition there announced "cannot be sustained upon principle. Nor upon the authority of adjudicated cases." Gulf, C. & S. F. Ry. Co. v. Levy, 59 Texas, 563. We later noticed the fact that the So Relle case was overruled by the Levy case and observed, "We find no case, except So Relle, which holds

that a party may come into court solely to redress an injury to his feelings. Such injury is not to the name, person, or property; but if to either of these an actionable injury is done, the complaining party may then recover, as actual damages, compensation for the proximate results of the wrongful act. When injury to the feeling is such result, it forms an element of actual damage." Stuart v. Western Union Tel. Co., 66 Texas, 580, 18 S. W. 351.

It is argued that Davidson v. Lee (Texas Civ. App.) 139 S. W. 904, error denied, supports appellees' contention in this statement: "The rule that damages cannot be recovered for mental suffering unaccompanied by physical injury is not applicable when the wrong complained of is a willful one intended by the wrongdoer to wound the feelings and produce mental anguish and suffering, or from which such result should be reasonably anticipated as a natural consequence." But that pronouncement was pure dictum. The opening paragraph of the opinion states that Lee was seeking damages for false imprisonment and assault. The testimony showed that in an effort to collect money claimed to be due him by Lee, Davidson restrained Lee in a hotel room against his will, pointed a pistol at him threatening "to shoot and kill him," assaulted Lee with his hands, and "roughly and rudely jerked and shoved" him around the room while demanding payment, thereby causing Lee fear and anguish, etc. Thus the case presented the elements of false imprisonment, assault with deadly weapon, threats to kill, assault, and assault and battery; all of which are recognized as torts and actionable independentlly and separately from mental suffering or other injury, but in which mental anguish may be compensated as one element of actual damages.

**2** The collection, or attempted collection, of usurious interest alone is neither a crime nor a tort, because the penalties against it must be fixed exclusively by the Legislature. Art. XVI, Sec. 11, Constitution of Texas, prescribes that all contracts for interest in excess of 10 per cent are usurious and directs the Legislature to provide appropriate pains and penalties to prevent usury. So we have Art. 5071, R.S., 1925, providing that all written contracts directly or indirectly calling for interest in excess of 10 per cent per annum shall be void as to the interest; Art. 5073, R.S. 1925, providing that whenever more than 10 per cent per annum is received or collected the payor may by suit for debt filed within two years recover double the amount of "such interest"; and Art. 4646b, Vern. Anno. Civ. Stats., authorizing

The Attorney General or any district or county attorney to file suits for injunction against persons engaged in lending money at usurious rates of interest under circumstances described in the statute. The above being the only pains and penalties prescribed by the Legislature, it follows that collection or attempted collection of usurious interest cannot be held a tort (as were the wrongs done in the Davidson-Lee case, supra) as a support for the recovery sought in this case. Ex Parte Hughes, 133 Texas, 505, 129 S. W. 2d 270.

**3** Moreover, since the common law does not recognize Harned's allegations as stating a cause of action, we would be invading the province of the Legislature if we should hold that they do state a case. Our very first statute declares that the common law of England, when not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision and shall continue in force until altered or repealed by the Legislature. Art. 1, R.S. 1925. See the recent case of Milner v. Red River Valley Pub. Co. (Texas Civ. App.) 249 S. W. 2d 227.

There is another reason why we think the Legislature should determine whether the rule contended for by Harned is to be adopted in this state. There are public policy considerations both for and against recognition of the proposed "new tort." Those considerations for it seem obvious. Those against it are noticed in the authorities discussed above, namely, mental anguish, standing alone, is too subtle and speculative to be measured by any known legal standard; mental anguish and its consequences are so intangible and peculiar and vary so much with the indidivual that they cannot reasonably be anticipated, hence they fall without the boundaries of any reasonably proximate causal connection with the act of the defendant; a "wide door" might thereby be opened not only to fictitious claims but to litigation over trivialities and mere bad manners as well; and, finally, since mental anguish can exist only in the mind of the injured party, not only its extent but its very existence can be established only by the word of the injured party, in the absence of some objective injury. These considerations are thus summarized by the highest court of Kentucky:

"Where mental anguish is not connected with some other wrong, such as breach of contract, or physical injury, the allowance of such cause of action opens a wide and dangerous field in which it is difficult, if not impossible, to consistently apply the

650

rule. It is easy to assert a claim of mental anguish and very hard to disprove it, the claim resting upon a mental condition, not capable of rebuttal by evidence within the reach or power of the defendant." Gardner v. Cumberland Telephone Co. et al., 268 S. W. 1108.

That these difficulties are real is shown by statements which we have quoted from proponents of "this new kind of tort action," for example, "The door to recovery should be opened but narrowly and with due caution"; the intentional infliction of *extreme* mental suffering by *outrageous* conduct will ultimately be treated as a tort; "if consistent pattern cannot yet be discerned in the cases" it but indicates that the law on this subject is in a process of growth; *severe* emotional distress is actionable; there should be liability for intentional infliction of mental anguish where *"reasonably capable of proof."*

We conclude, therefore, that any recognition of the cause of action contended for by appellees is a matter for the Legislature.

It follows that our answer to the question certified is "No."

Opinion delivered January 7, 1953.

Associate Justice Culver not participating.