**WEBSTER COLLEGE, Appellant,**

v.

**Charles C. SPEIER et al., Appellees.**

**No. 5444.**

Court of Civil Appeals of Texas,
Eastland.

Sept. 4, 1980.

Rehearing Denied Oct. 9, 1980.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, John M. O'Connell, San Antonio, for appellant.

Pat Maloney, Pat Maloney, Jr., San Antonio, for appellees.

RALEIGH BROWN, Justice.

This is a deceptive trade practice case. Eleven San Antonio police officers[1] sued Webster College for representations made to them in connection with a course of study in criminal justice. The jury answered liability issues against Webster College and fixed damages for expenditures for tuition and books, cost of travel to and from classes and mental anguish. There was no claim of physical injury. After the awards were trebled, judgment was entered for $174,940, of which $165,000 represents sums attributable to mental anguish, together with attorney's fees of $27,500 for trial representation, $11,000 if appealed to court of civil appeals, and an additional $7,535 if appealed to the Supreme Court of Texas. Webster College appeals. We reverse and remand.

The police officers enrolled in the first eight–week session of a postgraduate extension program operated by Webster College at Brooks Air Force Base in San Antonio. Approximately six weeks after the commencement of the session, Webster College notified the officers that the program would not be available to civilians after the completion of the first session. When that notice was given, some of the officers immediately dropped out, while others completed the first session courses.

The police officers testified that they intended to obtain master's degrees through the program and they were prevented from

obtaining that goal, since the subsequent sessions were not made available to them. They contended that it was represented to them that the course could be completed in one year and upon completion would entitle the officers to master's degrees conferred by Webster College.

■ In its first five points of error, Webster College argues that the court erred in rendering judgment for the sums attributable to mental anguish. We agree.

Our Supreme Court in *Brown v. American Transfer and Storage Company*, 601 S.W.2d 931, 939 (Tex.1980) denied an award of damages for mental anguish under the DTPA saying:

> The Act provides for recovery of actual damages. Actual damages means those recoverable at common law.
>
> In *Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81 (1953), this Court refused to adopt the "new tort" of intentional interference with peace of mind which permits recovery for mental suffering in the absence of resulting physical injury or an assault and battery. The *Harned* case recognized the well–established rule that mental suffering is compensable in suits for willful torts "which are recognized as torts and actionable independently and separately from mental suffering or other injury."
>
> The requirement of a willful tort was again stated in *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1968). This Court held, "Damages for mental suffering are recoverable without the necessity for showing actual physical injury in a case of willful battery because the basis of that action is the unpermitted and intentional invasion of the plaintiff's person and not the actual harm done to the plaintiff's body."

The court in *Duncan v. Luke Johnson Ford, Inc. et al.*, 603 S.W.2d 777 (Tex.1980) decided the matter of damages for mental anguish in a deceptive trade practice case saying:

1. The plaintiffs are: Charles C. Speier, Bruce W. Ritchey, Jr., Willie Smith, Jr., James A. Robinson, Jack Sumney, Don Brooks, Robert E. Rudewick, Thomas B. Foose, Alfred H. Domingues, Emil E. Fischer and Elton Simmons.

Damages cannot be recovered for mental anguish alone. *Harned v. E–Z Finance Company,* 151 Tex. 641, 254 S.W.2d 81 (1953). In the present case there is no proof of a willful tort, gross negligence, willful disregard, or mental anguish causing physical damage. There is no evidence to support the award of damages for mental anguish. *Duty v. General Finance Company et al.,* 154 Tex. 16, 273 S.W.2d 64 (1954).

The court in *Dennis Weaver Chevrolet, Inc. v. Chadwick,* 575 S.W.2d 619 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.) said:

In adopting DTPA, the legislature is presumed to have known of the decision in *Harned,* supra, that the question of the adoption of the rule permitting a recovery for mental anguish in the absence of physical injury was for its own determination—not that of the courts. See *Allen Sales & Service–Center, Inc. v. Ryan,* 525 S.W.2d 863, 865–866 (Tex.1975), and authorities therein cited.

In *Chadwick,* the court observed that "actual damages" contemplated by the Act meant only common law damages and that except in limited circumstances, damages for mental anguish are not recoverable under the common law of Texas in the absence of physical injury. The court said:

Recovery for mental anguish, in absence of physical injury, has been allowed by Texas Courts in very limited cases. *Ledisco Financial Services v. Viracola,* 533 S.W.2d 951 (Tex.Civ.App., Texarkana, 1976 no writ) (debt collection case); *Billings v. Atkinson,* 489 S.W.2d 858 (Tex. 1973) (intentional wiretap); *Fisher v. Carrousel Motor Hotel,* supra (assault and battery); *Pat H. Foley & Co. v. Wyatt,* [442 S.W.2d 904 (Tex.Civ.App.)] supra (viewing dead body); and negligent misdelivery of "death message" telegrams. *Western Union Telegraph Co. v. Buchanan,* 61 Tex.Civ.App. 212, 129 S.W. 850 (San Antonio, 1910 no writ).

Recovery was denied in a breach of warranty case involving a defective slab. *Rogowicz v. Taylor & Gray, Inc.,* 498 S.W.2d 352 (Tex.Civ.App., Tyler, 1973 writ ref'd n. r. e.).

We hold that in the instant case, as in *Duncan,* "there is no proof of a willful tort, gross negligence, willful disregard or mental anguish causing physical damage." Therefore, no recovery of damages for mental anguish is recoverable. See *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714 (Tex.Civ.App.—Corpus Christi 1980, writ filed).

■ Webster College next urges that the trial court erred in admitting into evidence a chart used by plaintiffs' attorney as a trial aid concerning alleged mental anguish and other claimed damages. We agree.

The chart listed the eleven officers with a column beside each name with a space to indicate cost of tuition, books, traveling, and mental anguish. During the course of his clients' testimony, plaintiffs' counsel filled in the blanks. We note that the jury responded to the damages issue with the amount set forth on the chart except for the cost of travel which the jury cut exactly in half for each officer.

It is said in 2 Ray, Texas Law of Evidence § 1465 (Texas Practice 3d ed. 1980):

Contrasted with the use of visual aids as actual evidence is the use by counsel in a personal injury case of charts upon which they list the various items of damage sought. They are used both in the opening statement and in the argument to the jury. Though frequently referred to as demonstrative evidence, they are not evidence at all in the sense that they constitute any proof of a fact or meet the tests of any of the exclusionary rules. They are merely props which counsel uses in trying his case.

In *Harvey v. State of Texas,* 389 S.W.2d 692 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.), complaint was made of the trial court's admission into evidence of such a chart. The court said:

Nevertheless we have no difficulty in concluding that this chart was not admissible in evidence. It was not proof of any fact material to any issue being tried,

being nothing more than the attorney's memorandum of what a witness had testified. We can think of no purpose it would serve except to aid the jury to remember the testimony of a certain witness, and we agree with appellants' counsel that the approval of such a practice would encourage the attorneys in every case to make similar charts of the testimony of all witnesses. This in our opinion would lead to much confusion, would unduly encumber records on appeal and would be contrary to the spirit, if not the letter, of Rule 281, Vernon's Texas Rules of Civil Procedure.

See also *McCombs v. Red*, 86 S.W.2d 648 (Tex.Civ.App.—Beaumont 1935, writ dism'd).

The action on the part of plaintiffs' attorney in making the notes on the chart is analogous to a juror making notes during trial. Justice Barrow, while Chief Justice of the San Antonio Court of Civil Appeals, in *Manges v. Willoughby*, 505 S.W.2d 379 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.), while considering the matter of jurors taking notes, said:

> We suggest, however, that where a juror is observed taking notes, the court should instruct the jury that such notes are not evidence, and that if the jury should disagree as to the testimony of any witness, the foreman may apply to the court and have the court reporter's notes read to the jury. See Rule 287, supra. This would minimize the possibility of a juror improperly giving evidence in the jury room.

■ We hold that the chart, as prepared, was not evidence and it was error to admit it into evidence. The error was compounded by the jury's taking the chart to the jury room and by the jury responding to plaintiffs' attorney's plea in closing argument that:

> The damages we say that, *this board which you'll take in with you*, accurately reflects the damages these people have gone through, the damages that they sustained as a result of Webster College's actions. (emphasis added)

We hold that this was reversible error under the test stated in Tex.R.Civ.P. 434.

■ Webster College contends that the judgment of the trial court should be reversed and judgment rendered in its favor because there is no evidence to support the jury's answers to special issues inquiring whether Webster College caused confusion or misunderstanding concerning sponsorship, approval, certification of its services or affiliation, connection or association with other agencies or institutions. Webster College also says there is no evidence that it represented its services had approval, sponsorship, benefits or qualities which they did not have, and that there is no evidence that any confusion, misunderstanding or representation was a producing cause of damages suffered by the plaintiffs. We disagree.

The rule to be applied when considering no evidence points is stated in *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974):

> When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings.

The inquiries summarized above were answered favorably to the plaintiffs, and review of the record reflects that while engaged in soliciting applicants to Webster College and in providing information to the plaintiffs regarding enrollment, Dr. Stephen Brown, Dean Harbin and a person named Lynn variously represented, in answer to specific questions, that Webster College's Master of Arts Individualized (MAI) program was fully accredited and that it was recognized by the State of Texas; that hours acquired at Webster College would be transferable to other graduate schools; that the MAI program could be successfully completed in one year; and that it was available to the plaintiffs.

Webster College argues that there is no evidence of authority for the above named

persons to make representations on its behalf. However, both Harbin and Brown are listed in Webster's Catalog as employees of the college; Brown as being Regional Program Coordinator. Brown is also listed on Webster's Class Schedule card as one to contact for information about the program. Though Lynn is not listed in any of Webster's publications, there is testimony that she was sent to the training room of the San Antonio Police Station in order to assist with and take applications for enrollment in Webster College.

Webster College's contention that there is no evidence that any representation made on its behalf was false is overruled. Approximately six weeks after plaintiffs began classes Mr. Duggan, listed in Webster's Catalog as Dean of the MAI program, went to San Antonio to inform them that they could not continue in the program because Webster College had failed to comply with a Texas Education Agency requirement that the program be in existence in the area for two years before offering its courses to civilians. Therefore, so far as the plaintiffs were concerned Webster College's MAI program was not available, could not be completed in one year and was not approved or recognized by the State of Texas.

■ Webster College challenges the admissibility of the statements made by Duggan on hearsay grounds. We think these statements were admissible as vicarious admissions of a party under the rules stated in *Southwestern Bell Telephone Company v. Ashley,* 563 S.W.2d 637, 641 (Tex.Civ.App.— Eastland 1978, writ ref'd n. r. e.).

In *Le Sage v. Pryor,* 137 Tex. 455, 154 S.W.2d 446 (1941), the court said:

Declarations of an agent or employee are admitted against the principal or employer as an exception to the hearsay rule and to make them admissible the facts must bring them clearly within the limitations of the exception. Not only must such declarations be made within the course of the employment, but they must bear close relation to the performance of an authorized duty or act in connection with which they are made. They must

not be purely voluntary or made merely in casual conversation. *Hinson v. Ely Walker & Co.,* 65 Tex. 103; *Southern Surety Co. v. Nalle & Co.,* Tex.Com.App., 242 S.W. 197; McCormick & Ray's Texas Law of Evidence, pp. 658–662, Sec. 508.

In *Deaton & Son v. Miller Well Servicing Co.,* 231 S.W.2d 944 (Tex.Civ.App.—Amarillo 1950, no writ), the court said:

Some very definite rules governing the admissibility of declarations of agents or employees as against the principal or employer are laid down in Fletcher Cyclopedia Corporations, Volume 2, beginning on page 723, Section 734. Such authority is recognized by the Texas courts as well as many other jurisdictions. Some of the pertinent rules there stated are: (1) that the fact of agency must be established before the declarations can be admitted and such agency must be established by evidence other than the declarations of the alleged agent; neither can the authority of an alleged agent be established by the declarations, acts or conduct of such agent alone; (2) that the admission or declaration must have been made in regard to a matter within the scope of the authority of the agent; (3) that it must appear that the alleged agent, at the time he made the declarations, was engaged in executing the authority conferred upon him, and that the declaration related to and was connected with the business then pending; such declaration must be made officially and not as an individual; (4) that the declaration must be made contemporaneously with the act to which it relates or practically so and a declaration as to past events is not admissible; (5) that the declaration must be of such a nature as to be part of the transaction, either accompanying the act or must be of such a nature as to unfold its character or quality; (6) that the declaration must be one of fact as distinguished from a mere expression of an opinion.

Considering the evidence as we must, we hold there is some evidence to support the jury's answers to the issues concerning confusion or misunderstanding and misrepre-

sentation. These points are overruled. Since an affirmative answer to any one of these issues is sufficient to establish liability under the DTPA, *Spradling v. Williams*, 566 S.W.2d 561 (Tex.1978), it is unnecessary to discuss the issues inquiring whether Webster College's conduct was unconscionable.

We also overrule Webster's point of error asserting there is no evidence to support the jury's answer to Issue 7 asking whether the acts inquired about in Issues 1–5 were a producing cause of any losses suffered by the plaintiffs. The record reflects that the plaintiffs specifically asked the representatives of Webster College about approval by the State of Texas, transferability of hours into and out of Webster's MAI program and the length of time required to complete the program and earn a degree. The testimony is that each of the plaintiffs relied on one or more of Webster College's answers in applying for enrollment, paying tuition and buying required books for the courses offered. We hold that there is some evidence to support the jury's affirmative answer to Issue 7. *Martinez v. Delta Brands, Inc.*, supra.

All points of error not specifically discussed have been considered and overruled.

The judgment is reversed and the cause remanded.