Ernest E. GUSTASON, Appellant,

v.

NORTHEAST NATIONAL BANK et al., Appellees.

No. 17331.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 13, 1972.

Rehearing Denied Nov. 10, 1972.

Puff & Jameson, and Jim Jameson, Fort Worth, for appellant.

King & Massey, Inc., and Marion L. Massey, Fort Worth, for appellees.

## OPINION

LANGDON, Justice.

This appeal is from a summary judgment in a suit initiated by the plaintiff, Ernest E. Gustason, appellant herein, against the defendants, Northeast National Bank and Robert Harrison, an officer of the Bank, appellees herein. The suit is based upon the alleged wrongful dishonor of two checks at a time when Gustason claims he had on deposit sufficient funds to cover said checks.

According to the pleadings one of the checks was dated September 4, 1970. It was dishonored on September 12, 1970. This check in the amount of $15.00 was payable to the Hillview Motel. The second check was dishonored between August 29, 1970, and September 15, 1970. This second check was payable to the Clerk of the District Court, Hays, Kansas. The date and the amount of the second check is not revealed by the pleadings or elsewhere in the record.

The defendants' (appellees) defense of the suit is based upon the provision of a Security Agreement which was duly assigned to it. The Security Agreement was executed by Gustason in connection with his purchase of an automobile from the Joe Adams Motor Company securing his debt (evidenced by a note) for the balance of the purchase price of the automobile.

The only affidavit of record is one by the defendant, Robert Harrison. The affidavit in part states: "I negotiated the assignment of the Security Agreement-Retail Installment Contract dated June 15, 1970 . . . said . . . Installment Contract being assigned to NORTHEAST NATIONAL BANK by Joe Adams Motor Company by Joe Adams on June 15, 1970. The first payment due and payable by Ernest E. Gustason under . . . said Security Agreement was due on July 18, 1970. No payment was ever received by NORTHEAST NATIONAL BANK and the July 18, 1970, payment as well as the August 18, 1970, payment was constantly in default. On or about September 1, 1970, after repeated demands upon Mr. Gustason to make his payments current under said contract, I did, on behalf of NORTHEAST NATIONAL BANK *elect to and did consider the total obligation immediately due and payable.* On or about September 1, 1970, I debited the checking account of Mr. Gustason in the amount of $154.99, being the $147.61 payment plus $7.38 late charge for the July 18th payment and retained the $80.88 balance in the checking account as collateral to be applied against the balance of the note. *Through an error by a bank employee, Plaintiff obtained the $80.88.* On or about September 28, 1970, NORTHEAST NATIONAL BANK did come into possession of the 1968 Cadillac automobile which was offered at public sale and said automobile was sold on October 12, 1970, for $3,200.00. After allowing Mr. Gustason all credits and offsets including a refund in the amount of $92.91 as unearned premiums on the insurance on said automobile, and $186.28 refund on the credit life insurance and accident and health insurance in connection with the financing of said automobile, and a rebate on the financing charges in the amount of $533.90, there was a balance due and owing on the obligation of Mr. Gustason to said Bank in the amount of $267.60. Any act taken by me on behalf of NORTHEAST NATIONAL BANK, or otherwise, has been under the terms and provisions of the

Security Agreement-Retail Installment Contract, dated June 15, 1970, heretofore referred to, as I understood and now understand the provisions of said contract." (Emphasis by italics added.)

The Bank cross-filed for the $267.60 deficiency referred to in the affidavit.

Plaintiff filed a motion for a partial summary judgment in which he urged the Bank to be held liable for such legal damages as he may be able to later prove upon trial of this cause. The defendant Bank then answered the plaintiff's motion and filed its motion for summary judgment which was granted by the Court.

Appellant on this appeal asserts it was error to hold the defendant Bank had no liability for converting appellant's bank account funds to its own use without consent of the depositor and in granting the judgment on all aspects of the case when there were issues of fact necessary for defendant to prove in order to establish a case for deficiency judgment.

We reverse and remand.

V.T.C.A., Bus. & C., § 4.402, "Bank's Liability to Customer for Wrongful Dishonor," provides that, "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

In 8 Tex.Jur.2d 446, "Banks," Sec. 261, "Dishonor of check by bank—Liability to drawer," it is said that, "When a drawer of a check has on deposit funds available for payment, refusal to pay the check renders the bank liable to him in damages, unless the bank has a lawful excuse for nonpayment, as by reason of the drawer's

insolvency and the consequent appropriation of the deposit to a debt due to the bank itself. The bank's liability for wrongful dishonor of a check is fixed as of the date of its occurrence. The cause of action is based on contract, and though it may be joined, as against the bank, with a cause of action sounding in tort, there may be misjoinder if the latter cause of action is asserted against an officer of the bank individually as well as against the bank. In order to support the action, there must be both allegation and proof that money sufficient to pay the check was on deposit in the bank at the time when the check was presented; but when a prima facie case against the bank is thus made out, the burden is then on the bank to establish any defense exonerating it from liability.

"Damages may be recovered for loss of time, money, and credit, provided a foundation for such recovery is laid by the pleadings, but not otherwise. But exemplary damages based on malice or damages for mental suffering are not recoverable."

The Security Agreement assigned to the Bank was couched in reasonably definite and certain language. It granted a security interest in all deposits maintained by the debtor with the Bank and any property of debtor in possession of Bank at any time (hereafter called "collateral"). Under the Security Agreement and the Uniform Commercial Code the Bank had the right to declare the debt due and payable and to take possession of the collateral which included the car and the deposits maintained in the Bank by the debtor (appellant).

In his brief the appellant concedes that the Bank had the right to take possession of his bank account. He complains that he was not given notice of any action by the Bank in taking possession of his account and was thereby deceived into believing that he had money in his bank account to cover checks that were returned to the payee because of insufficient funds.

The record does not reflect the date of or the manner by which the Bank took possession of the appellant's bank account. In his affidavit Harrison states that he elected to and did consider the total obligation due and payable. It is not clear from the affidavit whether Harrison is describing his state of mind or some overt act on his part which appears in the records of the Bank. The statement standing alone is not evidence. Further in his affidavit Harrison states that through an error by a bank employee, the plaintiff (appellant) obtained the balance of $80.88 remaining in the account after the checking account was debited in the sum of $154.99, representing the car payment and late charge. This statement represents a conclusion on the part of Harrison. Standing alone it is not evidence. The statement also suggests that the bank employee was not aware of any action on the part of the Bank to take possession of the account.

We are unable to determine from the record before us whether or not the dishonored checks were presented for payment before or after the $80.88 was withdrawn by the appellant. We do not know from such record whether or not the $80.88 would have covered the two checks. It is conceded that the Bank had a right to take possession of the bank account. We are unable to determine whether or not it did so. If the Bank did take possession of the funds in the appellant's account we are unable to determine the date such action was taken and the mechanics of how it was done.

"To entitle a party to a summary judgment, the provisions of this rule must be strictly complied with." Gardner v. Martin, 162 Tex. 156, 345 S.W.2d 274, 276 (1961).

". . . Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . the evidence must be viewed in the light most favorable to the party opposing the motion." Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41, 47 (Tex.Sup., 1965).

"The facts stated in an affidavit given in support of a motion for summary judgment must be so worded that if the testimony were given from the witness stand during the trial it would be admissible." Crain v. Davis, 417 S.W.2d 53, 55 (Tex.Sup., 1967).

The judgment of the trial court is reversed and the cause of action is remanded to the trial court for a trial on the merits.