**NORTHSHORE BANK, Appellant,**

v.

**James T. PALMER, Appellee.**

**No. 1177.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

July 9, 1975.

Rehearing Denied July 30, 1975.

T. D. Smith, William E. Heitkamp, Houston, for appellant.

John Bennett Lay, Bennett Lay, Kucera, Lay & Lang, Houston, for appellee.

CURTISS BROWN, Justice.

James T. Palmer (Palmer or appellee) brought suit against Northshore Bank (Bank or appellant) for the wrongful dis-

honor of several checks. Trial was to a jury which answered special issues paraphrased as follows: (1) That someone other than Palmer endorsed his name on a $275 check; (2) That thereafter, Bank intentionally refused payment of checks written by Palmer; (3) That the bank attempted to collect an overdraft resulting from the charge-back against the account of the $275 check and insufficient check fund charges resulting from its dishonor of Palmer's checks after it knew or should have known that the endorsement was a forgery; (4) That Palmer had suffered actual damages of $2,000; (5) That Palmer was entitled to punitive damages of $3,500; and (6) That the dishonor of the checks was not a result of a mistake. A Texas Rules of Civil Procedure 301 motion for judgment notwithstanding the verdict or in the alternative to disregard the answer to special issues four and five was filed by the Bank. The trial court overruled this motion and entered judgment for Palmer for $5,500.

■ Liability for the wrongful dishonor of an item is governed by Tex.Bus. & Com. Code § 4.402, V.T.C.A. (UCC 1968) which provides:

A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

Appellant attacks the submission and answers to the special issues on damages. Its attack on the actual damages contends that the trial court erred in overruling its Rule 301 motion. The answer to special issue number four is attacked on a factual sufficiency basis as well. In connection with this issue the jury was instructed as follows:

In connection with this issue you are instructed that you may take into consideration for finding actual damages the sum of money, if any, not repaid to James T. Palmer by Northshore Bank after Northshore Bank charged the check, payable in the amount of $275.00, dated October 18, 1971, marked as *Pltf's. Ex. 1* against his account, the damage to the credit and reputation of James T. Palmer, if any, mental anguish suffered by James T. Palmer, if any, the time lost by James T. Palmer from his employment and schooling, if any, on the occasion or occasions in question.

Appellant did not object to the instruction. Tex.R.Civ.P. 274. The gist of its argument with regard to the 301 motion is that the "actual damages" were established conclusively as to two of the elements: (1) the sum of money not repaid to Palmer after the charge-back and (2) the loss of time from employment and schooling. The Bank claims there was no evidence as to mental anguish or damage to credit and reputation. Given the lack of objection to the instruction in this case, loss of credit and mental anguish were properly considered here as "consequential" damages.

There was testimony by Palmer that he had lost approximately one week of time from school and work. At the time the Bank dishonored the checks, Palmer was in the process of becoming certified as a pipe welder. There was oral and documentary evidence as to the approximate salary he was making at that time. There was also testimony by an officer of the bank as well as bank records to show that in addition to the charge-back of the $275 forged instrument, Palmer was charged $15 for checks drawn on insufficient funds. This was supplemented by evidence of humiliation, embarrassment and of having been turned down for credit for the first time in his life. Given this evidence, the trial court did not

err in overruling the Rule 301 motion. *Eubanks v. Winn*, 420 S.W.2d 698 (Tex.Sup. 1967); *Leyva v. Pacheco*, 358 S.W.2d 547 (Tex.Sup.1962). Further, after reviewing the entire record under appropriate standards, we believe that there was factually sufficient evidence to support the jury's finding on actual damages.

 Appellant cites *State Nat. Bank of Iowa Park, Tex. v. Rogers*, 89 S.W.2d 825 (Tex.Civ.App.—Fort Worth 1935, no writ), as authority for the proposition that a depositor may not recover exemplary damages for wrongful dishonor. This case was decided before the enactment of Section 4.402, *supra*, and is not applicable. The authors of the code did not attempt to specify whether the bank's liability sounds in contract or tort. *See* Comment 2 to Section 4.402, *supra*. We think that the liability is "statutory" and more in the nature of tort than contract. The jury did not find that the dishonors were the result of a "mistake" which would have limited appellee to recovery of his *actual* damages only. In the instant case, unlike *State Nat. Bank of Iowa Park, Tex. v. Rogers, supra*, actual damages were established. *Gustason v. Northeast National Bank*, 486 S.W.2d 596 (Tex.Civ.App.—Fort Worth 1972, no writ), seems to be the only Texas case decided since the Legislature enacted Section 4.402, *supra*. Although mental anguish and exemplary damages were not involved in the case, the Court by way of dicta cited 8 Tex.Jur.2d *Banks* § 261 to the effect that:

> [d]amages may be recovered for loss of time, money, and credit, provided a foundation for such recovery is laid by the pleadings, but not otherwise. But exemplary damages based on malice or damages for mental suffering are not recoverable.

In addition to this statement being dicta, the case is distinguishable on at least two grounds. First, the court did not consider the full impact of Section 4.402 since the court merely sustained an attack on a summary judgment in favor of the bank and the allowable elements of damages were not before it. Second, all of appellant's attacks here are based upon claimed evidentiary deficiencies and not upon any improper elements being submitted to the jury. No objections to the issues were made on the basis that the issues submitted elements of damages which were not recoverable under the statute. The jury found, and appellant does not attack the finding, that the acts of dishonoring the checks were done intentionally. While there was no issue regarding a lack of good faith, appellant did not object to the lack of submission of such an issue. Tex.R.Civ.P. 274. The jury was instructed with regard to exemplary damages as follows:

> In connection with this issue you are instructed that punitive damages may be recovered only where there has been oppressive conduct or a reckless or malicious disregard of the rights of another. Punitive damages are intended as a warning and an example to prevent the defendant and others from the commission of like offenses and wrongs. In a legal sense an unlawful act done willfully and purposely is, as against that person, malicious.

The issue of malice or reckless disregard of Palmer's rights, if supported in the evidence, must be deemed found in his favor. Tex.R.Civ.P. 279.

 A forger had secured a number of printed checks of one Marvel Fikes and proceeded to include Palmer as one of his victims. A person showed up at the Bank seeking to cash the $275 check payable to Palmer. The teller ascertained that Palmer had an account with the Bank and paid out the money. She could not testify as to whether this person was or was not Palmer. Some four or five days later, the check was returned by the bank on which it was drawn because the signature was not like the signature of Fikes which it had on file.

The checks written by Palmer, which are in question here, had already been paid by the Bank, when the situation with respect to the forgery became known to it. The officer in charge immediately charged Palmer's account with the forged check despite his protestations that his endorsement was a forgery. When he went to see the bank officer to deny endorsement and receipt of the proceeds of the forged check, the officer called over a uniformed guard. Even though the checks had been cleared for payment and were covered by sufficient funds when presented, the Bank recalled them and returned them marked "paid in error" or "account closed". Palmer immediately reported the forgery to the police, contacted the bank on which the forged Fikes check was drawn, and contacted Mr. and Mrs. Fikes. He then underwent the embarrassment of calling on each of the payees of the dishonored checks. The Bank never relented. They charged appellee $5 for each check they considered drawn on "insufficient funds". Additionally, after all of the claims of Palmer were known to the Bank officer having charge of the matter, the Bank placed the claimed balance due in the hands of a collection agency, where it rests today. The Bank never has paid Palmer the $275 which under the jury's findings is wrongfully charged to his account. Under the Bank's own evidence, each step it took was deliberate and intentional and done with a knowledge of Palmer's claim of right. The exemplary damages found by the jury are reasonably related to the amount of actual damages found and are fully justified under the evidence. We overrule appellant's points attacking special issue number five and the answer of the jury thereto.

The case is affirmed.

Affirmed.