**BAYTOWN STATE BANK, Appellant,**

v.

**DON McMILLIAN LEASING COMPANY, Appellee.**

No. 1499.

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 11, 1977.

Rehearing Denied June 1, 1977.

Jon C. Pfennig, Reid, Strickland, Gillette & Elkins, Baytown, for appellant.

Jarrel D. McDaniel, G. Michael Curran, Vinson, Elkins, Searls, Connally & Smith, Houston, for appellee.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a summary judgment for repudiation of a contract.

Don McMillian Leasing Company, appellee, entered into three equipment leasing agreements with International Computer Credit & Recovery, Inc. The financing arrangements provided that Baytown State Bank, appellant, would honor drafts presented by Don McMillian drawn upon International's account up to thirty-six months. The bank also released its security interest in the equipment leased to International upon Don McMillian's payment of certain sums.

In July, August, and September of 1975, Don McMillian presented drafts totaling $2,062.11 which the bank honored; however, the bank dishonored the drafts for October, November, and December of that year. Considering International in default, Don McMillian made demand upon the bank for the balance owing on the leases totaling $63,234.73. Don McMillian claimed that this obligation was incurred by the bank as part of the financial arrangements. Upon the bank's refusal to pay the balance, Don McMillian filed suit asking for specific performance under the agreements, or in the

alternative, alleging breach of contract to honor the drafts resulting in damages of $63,234.73 plus delinquency and collection charges. The trial court ordered summary judgment against the bank for the full amount plus costs. The bank has appealed on three points of error: (1) The summary judgment evidence did not establish as a matter of law a repudiation and breach by the bank of the agreement to honor Don McMillian's drafts; (2) The evidence showed that a mistake existed as to the bank's obligations under the leasing agreement which would preclude recovery on the theory of anticipatory breach of contract; and (3) The trial court erred in not discounting the award of damages to its present value.

The summary judgment evidence consisted primarily of the lease agreements and the affidavits of E. W. Leach, manager of Don McMillian Leasing Company, and Kyle D. Wright, former president of Baytown State Bank. The controversy centers on three letters sent by the bank to Don McMillian in which the bank agreed to honor Don McMillian's drafts drawn on International's account. The important language in the three letters is identical except for the amount of the drafts:

> The Baytown State Bank also agrees to honor monthly drafts in the amount of $250.08 drawn by Don McMillian Leasing Co. on International Computer Credit & Recovery, Incorporated's account at this bank, not to exceed thirty six months from June, 1975. The only exception is for the lease to be paid in full earlier than the thirty six month term.

The bank by a sworn affidavit of its former president at the time the letters were executed, claimed that its intention under the agreement was only to honor drafts if International had sufficient funds in its account to honor them. It was on this basis, then, that the bank dishonored the drafts of October, November, and December. Don McMillian, on the other hand, argues that the letters amounted to a guarantee to honor all drafts up to thirty-six months, regardless of the amount in International's account.

In construing the effect of these letters we observe the rule that the parties' intention must be ascertained from the language used in the instrument. *Citizens Nat'l Bank v. Texas & P. Ry.*, 136 Tex. 333, 150 S.W.2d 1003–1006 (1941); *Grayson County State Bank v. Osborne*, 531 S.W.2d 846, 848 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.). We feel that the language in these letters is clear and unambiguous. A common sense reading lends itself to only one interpretation—that Baytown State Bank agreed to honor monthly drafts drawn on International's account by Don McMillian. The agreement to honor the drafts was unconditional. The "only exception" was in the event the lease was paid in full earlier than thirty-six months. To accept the bank's interpretation would render the purpose of the language meaningless since under the Uniform Commercial Code the bank is obligated to honor drafts drawn on its customer's account if the account has sufficient funds absent a lawful excuse for dishonor. Tex.Bus. & Comm.Code Ann. § 4.402 (1968); *Gustason v. Northeast Nat'l Bank*, 486 S.W.2d 596, 598 (Tex.Civ.App.—Fort Worth 1972, no writ). For these reasons we hold that the three letters amounted to a guarantee by the bank to honor all drafts presented by Don McMillian on International's account. It was no excuse that International did not maintain sufficient funds in its account during the months of October, November, and December.

By its first point of error the bank argues that the only evidence offered by Don McMillian to support the alleged repudiation was the affidavit of E. W. Leach. In that affidavit, Mr. Leach recounted the terms of the financial arrangements between Don McMillian and the bank including the bank's agreement to honor drafts drawn on International's account. He stated that the drafts for October, November, and December were dishonored by the bank and that there was a subsequent demand for the balance and the refusal. We agree with the bank that this evidence alone

would not sufficiently show an absolute repudiation of the agreement to warrant a summary judgment. It is well settled that the intention to abandon a contract must be expressed in positive and unconditional terms. *See Pollack v. Pollack*, 39 S.W.2d 853, 856–57 (Tex.Comm'n App.1931, holding approved). Repudiation may consist of words or actions that indicate an intention not to perform in the future. *Continental Cas. Co. v. Boerger*, 389 S.W.2d 566, 568 (Tex.Civ.App.—Waco 1965, writ dism'd). In any event, there must be a "definite and unequivocal manifestation of intention" not to perform, 4 A. Corbin, Corbin on Contracts § 973 (1951). The bank's mere dishonor of the drafts would not be a definite and unequivocal manifestation of its intention to repudiate the contract. Taking into account the volume of transactions that a bank is involved in every business day, it would not be uncommon for the wrongful dishonor to occur due to a simple accounting error. In this case, however, the bank's dishonor of the drafts was not the only evidence of repudiation. The bank maintained at trial and still maintains on appeal that it did not breach the agreement because it intended to honor the drafts only if International had sufficient funds to cover them. At no time would the bank have honored the drafts if International's account was deficient. This evidence of the bank's position on their obligation under the agreement when coupled with their action in dishonoring the October, November, and December drafts, manifests a clear repudiation of the guarantee agreement. In *Rapid Transit Lines, Inc. v. Transit Ads, Inc.*, 401 S.W.2d 276 (Tex.Civ.App.—Eastland 1966, no writ), the defendant pleaded no legal obligation under the disputed contract. The defendant's president testified that the contract was not binding on his company and the record revealed that defendant had refused to perform under the contract. The court held that this evidence along with other facts and circumstances established an anticipatory breach. *Id.* at 282. Viewing the summary judgment evidence in a light most favorable to the bank, we find that there was no genuine fact issue raised on the question of repudiation. The bank's reason for dishonoring the drafts was clear by its own defense and evidenced an intention not to perform in accordance with the terms of the contract. The bank's first point of error is overruled.

The bank's second point of error asserts that there was a mutual mistake over the construction of the language in the three letters since in his affidavit Kyle D. Wright stated that the bank's intention was to honor drafts only if there were adequate funds in International's account and not, as Don McMillian argues, to guarantee payment.

■ Although a mutual mistake between the contracting parties as to a material fact would be grounds for avoiding a contract, the mistake must be mutual, both parties laboring under a misconception. A unilateral mistake is not sufficient. Here, the language of the agreement to honor drafts was clear and unambiguous. If there was a mistake, it was unilateral on the part of the bank. *Hanover Ins. Co. v. Hoch*, 469 S.W.2d 717, 722 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); *Earp v. First State Bank of Abilene*, 356 S.W.2d 178, 181 (Tex.Civ.App.—Eastland 1962, writ ref'd n. r. e.).

■ Under the third point of error both the bank and Don McMillian have agreed that the total amount due after the date of the trial court's judgment of $63,234.73 should have been discounted to its present value at the 9 percent interest rate set in Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Supp. 1976). *See Universal Life & Accident Ins. Co. v. Sanders*, 129 Tex. 344, 102 S.W.2d 405 (1937). There being no dispute as to the proper award, we order that judgment be modified and reduced to the amount of $58,857.87.

Therefore, the judgment is modified in part and affirmed. Costs on appeal are assessed two-thirds against appellant and one-third against appellee.

Modified and affirmed.