FIRST NATIONAL BANK OF BELLAIRE, Appellant,

v.

Hal M. HUBBS, Appellee.

No. 17117.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 18, 1978.

Vickery & Brown, Charles R. Vickery, Jr., David W. Showalter, Houston, for appellant.

Werner & Rusk, Ray Hensarling, Houston, for appellee.

EVANS, Justice.

The plaintiff, Hal M. Hubbs, brought this action against the defendant, First National Bank of Bellaire, alleging that the sum of $3587.51 had been removed from his checking account without his authority and that the bank had wrongfully dishonored for "insufficient funds" his check to the Internal Revenue Service in the amount of $4800.00. The bank filed its answer and also filed a counterclaim for the balance allegedly due under three installment notes given by the plaintiff to finance the purchase of certain automobiles. The plaintiff thereafter filed a first amended original petition, alleging actual and punitive damages for the wrongful dishonor of his check, and pleading, in the alternative, that the bank had converted his money in the amount of $3587.51.

The cause was evidently tried and submitted to the jury on the theory of conversion. In response to the first two special issues the jury found that the bank had wrongfully exercised dominion, ownership or control over the plaintiff's property which resulted in damage to the plaintiff. In response to the third special issue the jury found that the sum of $10,000.00 would reasonably compensate the plaintiff for his damages. No other issues were requested by either side.

The trial court entered judgment on the jury's verdict that the plaintiff recover from the bank the sum of $3587.00 with interest at the legal rate from September 4, 1971 and its judgment further provided: "This recovery shall be offset by the claim of First National Bank of Bellaire against Hal M. Hubbs in the amount of $982.77, plus 15% attorney fees, plus 10% interest from September 4, 1971."

It is the bank's position that it was justified in removing the sum of $3587.51 from the plaintiff's account in order to safeguard the money after it had received notice of a claim being asserted by a third party. It also contends that it had the right to set off against the plaintiff's action for recovery of the money removed, an equal amount of indebtedness owed by the plaintiff to the bank on the three car installment notes.

In 1971 the plaintiff owned a general insurance agency, Houston National Agency, and his checking account was carried in the First National Bank of Bellaire as "Houston National Agency and Hal M. Hubbs." The plaintiff's agency was the sole representative of Northeast Insurance Company in the State of Texas, and it collected the insurance company's premiums and handled their claims. Bradford Associates was an insurance premium finance company located in the State of Maine, and the plaintiff testified that he had been authorized by Northeast to sign its name to checks from Bradford Associates and that during the time he had his account with Bellaire bank, he had signed checks in that manner for deposit to his account. There is dispute in the testimony as to whether the bank's officers were aware of the plaintiff's authority to endorse checks in this manner.

On September 3, 1971, an officer of the Bellaire bank received a telephone communication from an officer of Casco Bank & Trust Company in Maine, advising that Casco was handling the Bradford Associates account and that Bradford was claiming that checks made payable to Northeast Insurance Company, drawn on the Casco bank, and endorsed "Northeast Insurance Company by Houston National Agency," had been endorsed without authority. This communication was followed by a letter from the Casco bank to the Bellaire bank dated September 7, 1971, which advised that Bradford was asking relief from Casco and that Casco, in turn, was notifying the Bellaire bank that it would look to it under the warranty provisions of the Uniform Commercial Code. Upon receiving this communication, the Bellaire bank caused the sum of $3587.51 to be removed from the Houston National Agency's checking account and placed the money in the form of a cashier's check made payable to Houston National Agency with the notation "Funds held pending outcome of dispute." It is not clear why the exact amount of $3587.51 was withheld.

On September 23, 1971, the plaintiff made a written demand on the Bellaire bank for the return of the withheld funds, and the bank filed an interpleader action on September 27, 1971, which was subsequently dismissed. The Bellaire bank was never required to return any funds to the Casco bank.

■ Money may be the subject of an action for conversion if the fund can be described or identified as a specific chattel. However there is no conversion where the indebtedness may be discharged by the payment of money generally. *Hull v. Freedman*, 383 S.W.2d 236 (Tex.Civ.App.—Ft. Worth 1964, writ ref'd n. r. e.); *Graham v. Turner*, 472 S.W.2d 831, 839 (Tex.Civ.App. —Waco 1971, no writ).

■ A fund which is placed on deposit with a bank ordinarily becomes a general deposit, creating a debtor/creditor relationship between the bank and the depositor. *Citizens National Bank v. Hill*, 505 S.W.2d 246, 248 (Tex.1974). The title to the deposited funds passes to the bank, but the bank has the duty to disburse the funds on deposit in accordance with the directions of the depositor. *Mesquite State Bank v. Professional Investment Corp.*, 488 S.W.2d 73, 75 (Tex.1972).

■ In the case at bar the pleadings and proof show that the relationship of debtor and creditor existed between the plaintiff and the Bellaire bank and that the cause was erroneously tried on the theory of conversion. The plaintiff's pleadings and the undisputed evidence will support an action in debt for the return of the funds on deposit, but the bank had the right to offset against such recovery the amount of an equivalent indebtedness owed by the depositor to the bank. *Sears v. Continental Bank*

*& Trust Co.,* 562 S.W.2d 843 (Tex.1977). The plaintiff concedes that he received an appropriate credit for the amount of the funds on deposit against the amount owing upon the installment notes, and the undisputed evidence shows that the sum of $982.77 represented the unpaid balance due on the notes at the time of the judgment. Therefore, the question remaining for this court's determination is whether the plaintiff's recovery may be sustained on the theory of wrongful dishonor.

The vice president of the Bellaire bank who handled the transaction in question testified that after receiving notice of the possible claim from the Casco bank, the money was withdrawn from the plaintiff's account so that the plaintiff could not spend the money until the claim was settled. He testified that after this money was taken out of the plaintiff's account, the bank refused to honor any checks that came in on the account, including the check made payable to the Internal Revenue Service. He stated that the check to the Internal Revenue Service had been rejected because the account had been closed and because there wasn't enough money in the account to cover the check after the sum of $3587.51 had been withdrawn.

The plaintiff testified that in August 1971 he had issued a check for $4800.00 to the Internal Revenue Service and that at that time there was sufficient money in the account to cover the check. The record, however, does not show how much money remained in the account at the time the Internal Revenue Service check was presented for payment, and the evidence does not, therefore, conclusively establish that the bank's action in withdrawing the funds from the account caused the check to be dishonored.

■ In order to support an action for wrongful dishonor there must be both pleading and proof that there was money on deposit in plaintiff's account sufficient to pay the check at the time of presentment. *Gustason v. Northeast National Bank,* 486 S.W.2d 596 (Tex.Civ.App.—Ft. Worth 1972, no writ). The plaintiff's failure to meet his burden in this respect requires a reversal of the trial court's judgment.

■ In view of the fact that the cause was tried on an erroneous theory of law, and since the record does not affirmatively demonstrate the inability of the plaintiff to recover under a correct theory, the cause will be remanded for new trial. *Patterson v. Wizowaty,* 505 S.W.2d 425 [Tex.Civ.App.—Houston (14th Dist.), 1974, no writ]; *West Texas Equipment Company v. Walker,* 417 S.W.2d 864 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.).

■ In further proceedings in the cause it should be noted that a bank's liability for damages proximately caused by the wrongful dishonor of an item is governed by Tex.Bus. & Com.Code, § 4.402. Under this provision of the Code, the bank's liability is limited "to actual damages proved" when the dishonor occurs through the bank's mistake, and if "so proximately caused and proved" the recovery may include consequential damages, as for loss of credit and mental anguish. *North Shore Bank v. Palmer,* 525 S.W.2d 718 [Tex.Civ.App.—Houston (14th Dist.), 1975, writ ref'd n. r. e.].

The judgment of the trial court is reversed and the cause is remanded for a new trial.