FARMERS AND MERCHANTS STATE BANK OF KRUM, Appellant,

v.

Earnest FERGUSON, Appellee.

No. 18277.

Court of Civil Appeals of Texas, Fort Worth.

July 10, 1980.

Rehearing Denied Sept. 11, 1980.

Kenneth C. Raney, Jr., Houston, for appellant.

Kelsey, Wood, Gregory & Banks and R. William Wood and Ronald L. Phillips, Denton, for appellee.

## OPINION

SPURLOCK, Justice.

This is a suit by a bank customer against a bank for damages caused by the wrongful dishonor of several checks. The jury found that the bank had wrongfully dishonored some of plaintiff's checks in violation of Tex.Bus. & Comm.Code Ann. sec. 4.402 (1968). Plaintiff claims violation of the Texas Deceptive Trade Practices Act (DTPA) sec. 17.01 et seq.* (1968). Bank claims that DTPA does not apply and that the security agreement justified Bank in dishonoring of the checks.

Judgment was rendered disregarding the jury's findings on mental anguish and punitive damages. The remainder of the damages were trebled and attorneys' fees awarded. Judgment was rendered for plaintiff in the sum of $34,063.68.

We reform and, as reformed, affirm.

Ferguson obtained a loan ·from The Farmers and Merchants State Bank of Krum to open and operate a drug store in Krum. Several loans were arranged, including a consolidated loan which included money for living expenses prior to the opening of the store and two other loans which

---

* All references are to Tex.Bus. & Comm.Code Ann.

were for inventory financing. These loans were made between September of 1974 and January of 1976. Plaintiff pledged the inventory of the Krum store as collateral for loans, one of which had been paid in full.

Ferguson later formed a partnership and opened a new store in Lake Dallas. The Bank was informed and with the knowledge and approval of the Bank Ferguson sold some of the prescription drugs to a Denton pharmacist and moved the remainder of the inventory to his new Lake Dallas store, which was in the process of being opened. He deposited the proceeds of this sale in his account at the Bank. The Krum drug store, a sole proprietorship of Ferguson, was closed by May 1, 1977. Bank froze Ferguson's Krum drug store account on or about May 12, 1977, thus causing a number of checks written by Ferguson to drug companies to be dishonored.

At the time of the freeze, there was a balance in excess of $7,000 in the Ferguson account. The Bank honored three checks to prevent Ferguson from learning of the freeze, which would have caused him to stop making deposits. During the freeze the Bank also made three normal withdrawals as payment on the unmatured notes it held. Ferguson and the Bank agree that at the time of the freeze all payments on the loans were current and that the Bank never notified Ferguson that the account had been or would be frozen. The frozen account had sufficient funds to pay the checks drawn against it.

Ferguson was unable to obtain other bank financing to operate his Lake Dallas store and pay his dishonored checks to the drug companies. The wholesale drug companies were his suppliers at both Lake Dallas and Krum. He eventually obtained a loan from his father and paid the Bank in full. He left a small sum in the account which the Bank used to pay service charges.

Ferguson's suit was then brought for damages to his credit rating with the drug companies, damages sustained in his new store's opening and reputation, loss of time, loss of money, and damages because of loss of discounts for drug purchases. Damages for mental anguish and punitive damages were also sought and were found by the jury but not awarded by the court.

The jury found in response to special issues, stated in abbreviated form, the following: 1) that the Bank was a "payor" Bank when the checks were presented for payment; 2) that at all times here involved, Ferguson was a customer of the Bank; 3) that the Bank wrongfully dishonored the checks; 4) that such dishonoring was accompanied by malice by the Bank; 5) that the amount of punitive damages for dishonoring the checks was $10,000.00; 6) that the Bank represented to Ferguson that the depository contract conferred or involved rights, remedies, or obligations which it did not have; 7) that this misrepresentation proximately caused Ferguson's damages; 8) that the dishonoring of the checks constituted an unconscionable course of action; 9) that the unconscionable course of action proximately caused Ferguson's damages; 10) that the actions of the Bank in dishonoring some checks and honoring others constituted false, misleading, or deceptive acts or practices; 11) that these actions proximately caused Ferguson's damages; 12) that the Bank waived its rights, if any, under the security agreement to dishonor the checks; 13) that Ferguson's damages proximately caused by the dishonoring of the checks were: (a) loss of credit–$3,000; (b) mental anguish–$25,000; (c) loss of time–$5,000; (d) loss of money–$354.56; (e) loss of use of money–$1,500; and 14) attorneys' fees.

The trial court disregarded the jury's answers to special issues 4, 5, 6, 7 and 13B. It is our opinion the court erred in disregarding the jury's answers to special issues 4 and 13B.

Liability claims for the wrongful dishonor of checks can be based on either DTPA or sec. 4.402. Ferguson was awarded judgment under DTPA. Ferguson also proved the Bank's liability under sec. 4.402. The particular basis of liability is significant because recoverable damages under the two acts are not identical. Of particular importance in the instant case is that under DTPA actual damages are trebled

and attorneys' fees may be awarded. Section 17.43 of DTPA, which deals with Cumulative Remedies, is also applicable. At the time Ferguson's claim arose, this section read:

"The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; . . . ."

The first cluster of points of error assert that DTPA does not apply. The Bank states that DTPA is inapplicable because the Act at the time the case arose did not apply to services for "commercial or business use" and because the Act does not ever apply to Banks. The Bank also attacks jury submission and findings that the Bank's actions were false, misleading, deceptive and unconscionable, and raises no evidence and insufficient evidence points of error.

■ In reference to the Bank's first argument concerning whether DTPA applies, we note that the legislature on May 23, 1977, deleted "for other than commercial or business use" after "leased" in subdivision 2 of sec. 17.45. This amendment did not take effect until after the Bank had frozen Ferguson's account about May 12, 1977. The DTPA at the time in question was not available to business and commercial consumers and we are obliged to determine whether Ferguson's relationship with the Bank was in the character of such a consumer.

Ferguson carried the account under the City Drug name. The account was opened with a $2,000 loan from the Bank for Ferguson's living expenses prior to the time that City Drug opened. These funds were for the personal use of Ferguson, and the Bank was fully aware that the funds were to be used by him for personal living expenses. Ferguson testified that he worked with cattle and in building remodeling under the banker's direction before beginning the work involved in opening the drug store. The Bank had the opportunity to rebut this testimony but did not do so. No issue on the nature of the account was submitted to the jury. The signature card at the Bank was labeled "individual–commercial account", and this document was introduced into evidence and marked as Plaintiff's Exhibit 25. We hold that the account was for both personal and commercial use. Since it was not wholly for commercial use, Bank's point of error is overruled.

■ We next consider Bank's points of error dealing with whether DTPA applies to Banks. Although oral argument in this case preceded the Supreme Court's decision in *Riverside National Bank, et al. v. James Lewis*, 603 S.W.2d 169 (1980), we have delayed our judgment so that this case could be considered in light of the Supreme Court's ruling in *Riverside.*

Briefly, the facts in *Riverside* were as follows: Lewis purchased a new car and obtained financing from Allied Bank. A car loan was secured by a certificate of deposit and the car itself. After the first payment was missed, Allied told Lewis to seek other financing. He approached other banks and seemed to have been successful when a Riverside National Bank official told him that his loan there had been approved, but then, after a draft from Allied had been presented and refused, Riverside Bank confirmed that Lewis' loan would not be granted. Due to Riverside's refusal to honor the draft from Allied, Allied repossessed the car and sold it, deducted the deficiency from the certificate of deposit, and returned the balance to Lewis. Lewis sued Riverside for losses suffered in this transaction, claiming Riverside had breached its contract to loan money, had engaged in fraud, was guilty of deceptive trade practices, and had converted his property since Riverside retained a promissory note after refusing to give him a loan.

*Riverside* is not on point factually with the case now before this court. The majority ruling in *Riverside* carefully limits that holding "in the instant transaction" (at 172) and deals specifically only with the use of money over a period of time. The crux of the question considered by that Court is phrased at page 173 as follows:

"Other than Lewis' payment for the use of money, there was nothing else for which he paid, or which he sought to acquire. In order to determine whether Lewis was a 'consumer' entitled to maintain a private cause of action under section 17.50 of the DTPA, we must determine whether, in this transaction, Lewis sought or acquired 'by purchase or lease, any goods or services.' "

Under the facts in the case before us, the extension of credit is at best a peripheral issue. Wrongful dishonor is the issue pleaded and proved, and wrongful dishonor of a customer's checks in a manner particularly calculated by the Bank and in wanton disregard of that customer's rights was found by the jury in answer to special issues.

In *Riverside*, the holding that Lewis was not a consumer hinges on the definition of "goods" and "services" in sec. 17.45. Applying the *Riverside* reasoning to the instant case, we note that the Bank, as shown by plaintiff's exhibit 25 and uncontroverted testimony, charged a routine service fee in connection with its processing of Ferguson's checks. The Bank agreed to perform certain services, i. e., to honor checks drawn on Ferguson's account when sufficient funds were deposited. The Bank by its own records had the right to receive a service charge for the use of its services. The Bank charged and collected fees for its services in processing Ferguson's checks. The Supreme Court in *Riverside* (at 174) quotes *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962) to define services:

" '[A]ction or use that further some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object.' "

The *Riverside* court continues:

"This definition described 'services' in terms of 'action,' 'conduct,' 'performance' and 'deeds.' All of these synonyms demonstrate that services includes *an activity* on behalf of one party by another. This characterization indicates that 'services' is similar in nature to work or labor."

The regular, routine process of honoring checks would appear to be covered by the definition of "services" by the Supreme Court in *Riverside*. Ferguson paid the service fees both before and after the dishonor. We hold, in this case, that Bank contracted and received consideration for providing services to Ferguson.

The *Riverside* holding provides another basis for finding that DTPA applies to the facts in the instant case. In footnote 5 (603 S.W.2d p. 175), after holding that DTPA does not apply to the lending of money in part because no evidence was adduced at trial showing that additional services were necessarily performed by the Bank in connection with considering the loan, the Court stated:

"Accordingly, we do not pass upon the question whether a bank's misrepresentation concerning its activities, such as the availability of financial counseling, the cost of processing a loan or the ability to pay a customer's monthly bills, could constitute a deceptive act in connection with a sale of 'services.' We only hold that where those activities are not the subject of the complaint, then the presence of such collateral activities in a transaction otherwise not covered by the DTPA does not subject the parties to liability under the DTPA."

The facts in the instant case seem to fit squarely within the question reserved by the Supreme Court in footnote 5 because the deliberate dishonoring of checks, a wrongful performance of a routine bank service, is the specific complaint. The reasoning of the Supreme Court therefore supports our holding that Ferguson was a consumer of services as defined in DTPA. Evidence supports the jury's findings that the Bank's services were routinely performed for a fee until selected checks were dishonored.

A third basis also exists for finding that DTPA applies to this particular situation. Section 17.44 reads:

"This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect con-

sumers against false, misleading, and deceptive business practices, *unconscionable actions*, and breaches of warranty and to provide efficient and economical procedures to secure such protection." (Emphasis ours.)

Applying this philosophy in a manner consistent with *Riverside*, we hold that the DTPA does apply, that Ferguson was a "consumer", and that the Bank provided "services". Bank's points of error concerning DTPA are overruled.

■ Bank also argues that Section 17.-46(c)(1) of DTPA requires the holding that the Act does not apply to banks. This subsection states that courts will be guided by the federal decisions interpreting the Federal Trade Commission Act [15 U.S.C.A. sec. 45(a)(1)] when considering cases arising under DTPA. This is simply not a sec. 17.46(c)(1) question since it is not a matter of using federal court decisions to aid in the interpretation of DTPA. The Federal Trade Commission Act specifically excepts banks. No interpretation on this particular issue could arise under that Act's own explicit language. Had the Texas legislature chosen to make the DTPA parallel to the Federal Trade Commission Act in this regard, it clearly could have done so. The DTPA does not specifically except banks. Bank's point of error is overruled.

■ The jury found that the Bank's actions in selectively dishonoring some checks between May 1 and May 12 were false, misleading and deceptive practices, and that these actions constituted an unconscionable course of conduct. Bank raises points of error of no evidence and insufficient evidence and also attacks submission of these issues to the jury. The issues were properly submitted. The record supports the jury findings. Bank's points of error are overruled.

Ferguson by cross–point asserts error of the trial court in disregarding the jury's findings on damages for mental anguish. Both DTPA and sec. 4.402 allow recovery for mental anguish. The cross–point is sustained; damages for mental anguish should be added to the judgment already rendered.

The Supreme Court on two occasions has indicated that damages for mental anguish can be recovered under DTPA. The first time in *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977), the court considered the effective date of the Act in the calculation of damages, including those for mental anguish. It held that the legislature mandated trebling of damages for the individual consumer to provide both a method to discourage deceptive practices and the incentive to do so. The Supreme Court has considered the application of DTPA to mental anguish damages a second time very recently. In *Brown v. American Transfer and Storage Company*, 601 S.W.2d 931 (1980), the Court determined that the evidence in that particular case would not support an award for damages for mental anguish under DTPA. It noted in that holding that neither a willful tort was alleged nor was there a showing of physical injury. We find both of these factors present in the instant case.

■ We next consider the violation of sec. 4.402 and whether it is in the nature of a willful tort or a breach of contract. Section 4.402 reads:

"A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

The Supreme Court has not addressed whether violation of this section is a tort or breach of contract. Mental anguish damages are normally recoverable in tort but not breach of contract situations. Two courts of appeals have permitted recovery under this section for damages for mental anguish as consequential damages. In *Northshore Bank v. Palmer*, 525 S.W.2d 718,

720 (Tex.Civ.App.–Houston [14th Dist.] 1975, writ ref'd n. r. e.), the court considered whether the Bank's liability sounded in tort or contract and it concluded:

"The authors of the code did not attempt to specify whether the bank's liability sounds in contract or tort. *See* Comment 2 to Section 4.402, *supra*. We think that the liability is 'statutory' and more in the nature of tort than contract. The jury did not find that the dishonors were the result of a 'mistake' which would have limited appellee to recovery of his *actual* damages only."

The Uniform Commercial Code Comment, No. 2, to this section reads:

"The liability of the drawee for dishonor has sometimes been stated as one for breach of contract, sometimes as for negligence or other breach of a tort duty, and sometimes as for defamation. This section does not attempt to specify a theory."

Because of the facts in the instant case, it is our opinion in this particular situation, where wanton disregard of another's rights has been specifically found by the jury, where injury to property has been proven, and where physical illness has occurred, the nature of the action sounds in tort.

In another case, *First Nat. Bank of Bellaire v. Hubbs*, 566 S.W.2d 375, 378 (Tex. Civ.App.–Houston [1st Dist.] 1978, no writ), the court remanded for a new trial because the cause was tried on an erroneous theory of law. It noted that under sec. 4.402, "the recovery may include consequential damages, as for loss of credit and mental anguish."

*Northshore Bank* is on point factually with the case at bar. In both cases the jury found actual damages including mental anguish and also found punitive damages. If judgment in the instant case were to be based solely on sec. 4.402, the sound reasoning of the Houston court would be adopted. The only other case we find concerning the application of sec. 4.402 in regard to damages for mental anguish and punitive damages is *Gustason v. Northeast National Bank*, 486 S.W.2d 596 (Tex.Civ.App.–Fort Worth 1972, no writ). *Gustason* was a summary judgment proceeding occurring shortly after sec. 4.402 was revised, so the court did not have the damage issues before it and any language in that opinion concerning damages is dicta.

We note further that sec. 4.402 specifically contemplates recovery for damages for false arrest or for malicious prosecution, each of which sounds in tort rather than contract.

For the above reasons, we hold that the instant actions constituting wrongful dishonor under sec. 4.402 sound in tort.

■■■ We next consider whether the jury's finding of damages for mental anguish, under sec. 4.402 or DTPA, has support in the evidence. Mental anguish in Texas must normally be accompanied by physical injury, injury to property, or other elements of actual damage. *Harned v. E–Z Finance Co.*, 151 Tex. 641, 254 S.W.2d 81 (1953) and *Duty v. General Finance Company*, 154 Tex. 16, 273 S.W.2d 64 (1954.) The *Harned* and *Duty* requirements are clearly met in this case, as established by the evidence and the jury's findings that Ferguson had suffered injury to his property in the form of loss of money, loss of time and loss of credit. Ferguson also had physical illness, although this requirement is not necessary when the damages suffered are from a deliberate, willful act which is in wanton disregard of another's rights. Bank acted intentionally and without just cause in dishonoring selected checks written by Ferguson. The jury awarded actual damages, and evidence supports the jury's findings. Bank's points of error, attacking jury submission and findings as well as no evidence and insufficient evidence points, are overruled.

Bank asserts the damages found by the jury are excessive. Ferguson was a young man engaging in his first business venture. The checks he gave in payment to the suppliers of the drugs he used in his business and profession were returned dishonored. He was frantically calling the holders of dishonored checks, trying to save his dis-

counts and to keep merchandise on hand so he could stay in business. He was found to have suffered mental anguish, upset stomach and physical ailments as a result of the Bank's willful actions.

 Where the law furnishes no specific guide or rule in measuring damages, the amount of the damages is largely in the discretion of the jury. We adopt and hold that the rule stated in 22 Am.Jur.2d sec. 366, *Damages*, "B. Excessive Damages 1. In General" (1965).

"'The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.' The formula which is perhaps most frequently used is to the effect that to warrant interference the verdict must be so excessive as to appear to have been given under the influence of passion or prejudice. Another statement is that to warrant interference the award must be so excessive as to shock the judicial conscience."

We therefore uphold the jury's findings on damages.

 Bank contends the court erred in allowing a trial amendment pleading that the security agreement had been waived and that reversible error was thereby occasioned. We overrule this point of error. This issue on waiver of security agreement had been tried during the course of the trial. Ferguson had testified that the Bank permitted him to sell some of the inventory and to move other parts of the inventory to his new store. This testimony was received without objection. There is no showing that the trial court abused its discretion.

 Ferguson acknowledges that he is not entitled to treble damages under the DTPA and punitive damages under sec. 4.402. We hold that since recovery is allowed under the DTPA, Ferguson is not entitled to the $10,000 punitive damages awarded by the jury. The trial court was correct in not allowing this item of damages.

Each point of error asserted by the Bank has been severally considered and each is overruled. Ferguson's cross–points are each overruled except the one sustained as indicated in this opinion.

 The judgment is reformed. We affirm that part of the judgment awarding actual damages of $3,000 for loss of credit; $5,000 for loss of time; $354.56 for loss of money, and $1,500 for loss of use of money; and trebling of these damages as mandated by DTPA. We reform the trial court's judgment to award Ferguson the jury's finding of $25,000 damages for mental anguish, which is likewise trebled under DTPA. We affirm the trial court's judgment awarding attorneys' fees and refusing to award punitive damages since actual damages were trebled. Judgment is reformed to award Ferguson $104,563.68, plus $6,000 attorneys' fees through this court, and $1,000 additional attorneys' fees if appealed to the Texas Supreme Court, plus interest thereon at the rate of 9% per annum from August 31, 1979 until paid. As so reformed, judgment is affirmed.

MASSEY, C. J., concurs.

MASSEY, Chief Justice, concurring.

I concur in the result reached by the majority, but am moved to protest the application of the Texas Deceptive Trade Practices Act to a situation which in earlier times would have fallen exclusively within the realm of tortious breach of an existent contract. See 10 Am.Jur.2d p. 547, *Banks*, sec. 576, "(Damages)–Amount; particular elements of damages recoverable." (1963).

It appears that there now is no occasion to distinguish causes of action for fraudulent inducement to enter upon a contract from those for tortious breach of contracts already in existence. Either wrong will probably fit into the character of cases for

which the Legislature has seen fit to provide damages under the Deceptive Trade Practices Act.

It is not merely the doctrine of *caveat emptor* which has ceased to be. Because of what is now to be treated a "consumer" under the Act a bank in which a customer has maintained an account for over thirty years (presumably begun by the bank in contemplation of then existing laws which established appropriate damages for which it might be liable for a failure in respect to some duty owed the customer) might very well find itself bound by contract to one with which it would never have contracted in the first place had there been opportunity to know that the law would change so as to multiply by three (3) times the damage exposure in the event of the same failure, should it amount to a breach of contract a jury might deem tortious.

In some situations courts are obliged to yield what might be their concept of justice and to apply laws as prescribed by statute in contradiction of rules of common law, i. e., in contradiction of the supposed cumulative wisdom of American and English judges for hundreds of years. I consider the present case to be one of these. This court has ruled in obedience to its obligation to order a statute upheld.