THE TWIN CITY BANK *v.*
Kenneth ISAACS, et ux

84-75                                        672 S.W.2d 651

Supreme Court of Arkansas
Opinion delivered July 2, 1984

*House, Wallace & Jewell, P.A.,* by: *John R. Clayton* and *Daryl G. Raney,* for appellant.

*Bob Scott* and *Tom Hinds,* for appellee.

STEELE HAYS, Justice. Twin City Bank has appealed from a judgment entered on a jury verdict against it in favor of Kenneth and Vicki Isaacs for damages sustained from the bank's wrongful dishonor of the Isaacs' checks resulting in a hold order against their account for a period of approximately four years.

On Sunday, May 13, 1979, the Isaacs discovered that their checkbook was missing. They reported the loss to Twin City promptly on Monday, May 14, and later learned that two forged checks totalling $2,050 had been written on their account and honored by the bank on May 11 and 12. The sequence of events that followed is disputed, but the end result was a decision by the bank to freeze the Isaacs' checking account which had contained approximately $2,-500 before the forgeries occurred. A few checks cleared Monday morning before a hold order was issued leaving the balance at approximately $2,000. Mr. Isaacs had been convicted of burglary and the initial hold on the account was attributable to the bank's concern that the Isaacs were somehow involved with the two forged checks. The indi-

vidual responsible for the forgeries was charged and convicted soon after the forgeries occurred and on May 30, 1979 the police told the bank there was nothing to connect the Isaacs with the person arrested. Two weeks later the police notified the bank a second time they could not connect the Isaacs to the forgeries. The bank maintains it continued to keep the account frozen on the advice of its attorneys. However that may be, the Isaacs were denied their funds for some four years. The Isaacs filed suit in Mid-June of 1979 for wrongful dishonor of their checks and wrongful withholding of their funds.

The jury awarded the Isaacs $18,500 in compensatory damages and $45,000 in punitive damages. The bank made a motion for a new trial pursuant to ARCP Rule 59, which was denied. From that denial the bank brings this appeal contending error on three grounds: 1) Misconduct of a juror at trial, 2) the trial court's refusal to give two requested instructions, and 3) jury error in assessing excessive damages contrary to the evidence and the law.

The bank's arguments with respect to juror misconduct and the refusal of two instructions requested by it are readily answerable. It is urged that one of the jurors, who had indicated on voir dire that she was not acquainted with the Isaacs, was seen in conversation with them during a break in the trial. At the suggestion of the bank's attorneys the Isaacs were questioned in chambers and it was learned the juror had asked Kenneth Isaacs (who had testified earlier he lived on Sheila Drive) if he knew the Whitehead family. He answered that he thought he knew the family, but wasn't sure. The bank cites us to *Zimmerman* v. *Ashcroft, Admn.,* 268 Ark. 835, 597 S.W.2d 299 (Ark. App. 1980), but the two cases have little in common. In *Zimmerman,* two jurors had failed to answer on voir dire whether they were involved in litigation in which counsel for either side were participants, when in fact they were involved. Here, there is no suggestion that the juror did not respond truthfully to questions asked on voir dire. The bank insists the trial judge should have questioned the juror about the incident, rather than simply offering that opportunity to counsel for the bank, who demurred for fear of incurring resentment by the juror. But

decisions of this sort must rest largely with the discretion of the trial court and there was no error in the refusal to grant a mistrial. Mistrial is an extreme remedy to be resorted to only where the error is so prejudicial that justice cannot be served by continuing. *Back* v. *Duncan*, 246 Ark. 494, 438 S.W.2d 690 (1969).

The bank submits the jury should have been instructed in accordance with tendered instruction No. 15 and AMI No. 2229, both of which were properly refused by the trial court. The first would have told the jury that the Isaacs had the burden of proving their damages, and if they failed in that burden its verdict should be for the bank. But the burden of proof was covered by AMI 202 and 203 and the instruction offered was plainly slanted toward the bank, and was not in compliance with our Per Curiam Order dated April 19, 1965, that when instructions are used which do not appear in AMI, they shall be "simple, brief, impartial, and free from argument." See Arkansas Model Jury Insturctions, 2d Ed., p. xxxi.

With respect to AMI 2229, we find no error in the refusal of the instruction. Whether the bank was entitled to any instruction or mitigation based on the evidence is arguable, but in any event the instruction presented was not appropriate to the proof. AMI 2229 deals with physical damage to real or personal property and is intended to follow AMI 2221, which must include the appropriate property damage claim covered by AMI 2222 through 2228. None of these was used by the court and the damage instruction given the jury (AMI 2201) included only losses pertaining to money wrongfully withheld, mental anguish and financial loss. See *Reynolds* v. *Ashbranner*, 212 Ark. 718, 207 S.W.2d 304 (1948); *Bovay* v. *McGahhey*, 143 Ark. 135, 219 S.W.2d 1026 (1920).

On the issue of damages, the bank maintains there was insufficient evidence to support the $18,500 award for mental anguish, for loss of credit and loss of the bargain on a house, that the award of punitive damages should not have been given at all as there was not only insufficient proof of actual damages but insufficient evidence of malice or intent

to oppress on the part of the bank. The bank does not challenge the sufficiency of the evidence of its wrongful dishonor, but contends only that there was no evidence to support an award of damages. These arguments cannot be sustained.

The statute upon which this suit was based is Ark. Stat. Ann. § 85-4-402:

> Bank's liability to customer for wrongful dishonor—A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

The jury was instructed that if they found the bank liable they were to fix the amount of money which would compensate the Isaacs "for any of the following elements of damage sustained which were proximately caused by the conduct of Twin City Bank: 1) Any amounts of money wrongfully held by the defendant and remaining unpaid 2) any mental anguish and embarrassment suffered by the plaintiffs 3) any financial losses sustained by the [Isaacs]."

Initially, there can be no serious question as to certain losses: the $2,000 wrongfully withheld by the bank for four years, and the value of two vehicles repossessed because the Isaacs' did not have access to their funds, resulting in a loss of approximately $2,200. Additionally, after the account was frozen the bank continued to charge the account a service charge and overdraft fees on checks written before the forgeries but presented after the account was frozen. The bank does not refute these damages but argues there is no showing of any financial deprivation from loss of credit or loss of the bargain on a house the Isaacs wanted to buy, and insufficient proof of mental anguish. We find, however, that

in addition to the losses previously mentioned, there was sufficient evidence to sustain damages for mental suffering, loss of credit, and sufficient demonstration of some loss attributable to the inability to pursue the purchase of a home.

Mental suffering under § 4-402 of the Uniform Commercial Code is relatively new and has not been frequently addressed by other courts, but of those a majority has allowed recovery. *Morse* v. *Mutual Federal Savings and Loan,* 536 F. Supp. 1271 (Mass. 1982); *Farmers & Merchants State Bank of Krum* v. *Ferguson,* 617 S.W.2d 918 (Tex. 1981); *North Shore Bank* v. *Palmer,* 525 S.W.2d 718 (Tex. 1975); *Kendall Yacht Club* v. *United California Bank,* 50 Cal. App. 3d 949, 123 Cal. Rept. 848 (1975); and see White, Summers, Uniform Commercial Code (1980 2d ed.) § 17-4, p. 675. In general, the type of mental anguish suffered under § 4-402 does not need to rise to the higher standard of injury for intentional infliction of emotional distress. Wrongful dishonors tend to produce intangible injuries similar to those involved in defamation actions. See *State Bank of Siloam Springs* v. *Marshall,* 163 Ark. 566, 260 S.W. 431 (1924). Damages of this kind are more difficult to assess with exactness. In *Wasp Oil* v. *Arkansas Oil and Gas,* 280 Ark. 420, 658 S.W.2d 397 (1983) we noted the general rule that damages may not be allowed where they are speculative, resting only upon conjectural evidence, or the opinions of the parties or witnesses, but there are instances where damages cannot be proven with exactness. In *Wasp* we recognized a different rule applies when the cause and existence of damages have been established by the evidence, that recovery will not be denied merely because the damages cannot be determined with exactness. We went on to say the plaintiff in the case at bar was not trying to prove the latter sort of damage such as *mental anguish* as a result of defamation, but loss of income.

Decisions upholding recovery for mental suffering under the code have found injury resulting from circumstances comparable to this case. In *North Shore Bank* v. *Palmer, supra,* for example, a $275 forged check was paid from Palmer's account. After the bank knew or should have

known the check was forged, it charged Palmer with the $275 check and later wrongfully dishonored other checks. Part of the actual damages awarded was attributed to mental suffering for the "embarrassment and humiliation Palmer suffered from having been turned down for credit for the first time in his life."

In *Morse* v. *Mutual Federal Savings and Loan, supra,* $2,200 was awarded for "false defamatory implications arising from temporary financial embarrassment." And in *Farmers & Merchants State Bank of Krum* v. *Ferguson, supra,* the plaintiff's account in the the amount of $7,000 was frozen for apparently one month for reasons not stated. The plaintiff was awarded $25,000 for mental anguish, $3,000 for loss of credit based on a denial of a loan, $5,000 for loss of time spent making explanations to creditors, and $1,500 for loss of use of his money. The court justified the mental suffering award because the dishonor was found to be with malice—the bank had failed to notify Ferguson that the account was frozen, some checks were honored while others were not, and the bank continued to withdraw loan payments due it during the entire time.

In this case, prior to the forgery incident the Isaacs' credit reputation with Twin City Bank was described by the bank as "impeccable" and the freezing of their funds had a traumatic effect on their lives. They obviously lost their credit standing with Twin City, and were unable to secure credit commercially at other institutions because of their status at Twin City. The Isaacs had to borrow from friends and family, and were left in a precarious position financially. They did not have use of their $2,000 for four years. The allegation relative to the loss of a house resulted from the dishonor of an earnest money check for a home they were planning to buy, ending prospects for the purchase at that time. Though there may have been insufficient proof of loss of the bargain on the house, as the bank argues, nevertheless this evidence was admissible as an element of mental suffering. The denial of credit contributed to some monetary loss as occurred in *Ferguson, supra,* in addition to its being a reasonable element of mental suffering as was found in *Palmer, supra.* There was also testimony that the financial

strain contributed to marital difficulties leading at one point to the filing of a divorce suit. The suit was dropped but there was testimony that the difficulties caused by the bank's action caused substantial problems in the marriage. Finally, the Isaacs lost equities in two vehicles repossessed as a result of the withholding of their funds. One of these, a new van, was repossessed by Twin City in June, 1979, before a five day grace period for a current installment had expired.

We believe there was substantial evidence to support the verdict. The jury heard the evidence of the amount wrongfully withheld, the loss of two vehicles, credit loss through loan denials, loss of the use of their money for four years, the suffering occasioned by maritial difficulties, the inability to acquire a home they wanted, and the general anxieties which accompanied the financial strain. We recognize that our holding today presents some conflict with pre-code law by allowing recovery without exactness of proof as to damages. In *State Bank of Siloam Springs* v. *Marshall, supra*, a suit based on the predecessor to § 85-4-402, we stated that the plaintiff must show the facts and circumstances which occasioned the damage and the amount thereof. However, *Marshall* itself recognized the nature of the damages in this action, and § 85-4-402, although similar to its predecessor, has additional language which impliedly recognizes mental suffering and other intangible injuries of the type noted in *Wasp, supra*, as recoverable under this statute. See White, Summers, supra § 17-4, p. 675. To the extent that exactness in proof is not required, the law as stated in *Marshall* is displaced by § 85-4-402.

The bank's objection to the award of punitive damages is threefold: a) The instruction on punitive damages was in accordance with AMI 2217, which is intended for use in negligence cases and not applicable here; b) there was not evidence that the bank acted intentionally or with malice; and c) the verdict of $45,000 was excessive. However, we address only the question of the excessiveness of the verdict as the other points were not raised in the trial court by objection to the instruction. *Crowder* v. *Flippo*, 263 Ark. 433, 565 S.W.2d 138 (1978); *Dodson Creek Inc.* v. *Walton*, 2 Ark. App. 128, 620 S.W.2d 947 (1981); ARCP Rule 51.

*In Holmes* v. *Holungsworth,* 234 Ark. 347, 352 S.W.2d 96 (1961), we noted the elements that may be considered in assessing the amount of punitive damages, recognizing that the deterrent effect has some correlation to the financial condition of the party against whom punitive damages are allowed. In view of the circumstances in their entirety presented by this case, we cannot say the amount awarded was grossly excessive or prompted by passion or prejudice. See *First National Bank* v. *Frey,* 282 Ark. 339, 668 S.W.2d 533 (1984); *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972); *Volger* v. *O'Neal,* 226 Ark. 1007, 293 S.W.2d 629 (1956).

The judgment is affirmed.

HOLLINGSWORTH, J., not participating.